ALLEN, APPELLANT, *v.* BELL, RESPONDENT.

(No. 2,028.)

(Submitted December 24, 1904. Decided February 17, 1905.)

*Master and Servant—Injuries to Servant—Mines—Explosions —Vice-principal—Safe Place to Work—False Information —Contributory Negligence.*

Nonsuit—Appeal—Presumptions.
    1. On appeal from a judgment sustaining defendant's motion for a nonsuit made at the close of plaintiff's evidence, every fact which the evidence tends to prove will be deemed proved.

Master and Servant—Mines—Explosions—False Information—Vice-principal—Negligence.

2.   Where, in an action for injuries to a miner by the discharge of a blast, it appeared that B. had charge of the operating department of the entire mine for defendant, and was authorized to hire and discharge men, and that he directed them where, when, and how to work, and that his supervision of the mine was supreme, except that defendant directed when new work was to be commenced, and B. falsely stated to plaintiff before he went into the mine that a blast by which plaintiff was injured had been discharged, B. was a vice-principal, and not plaintiff's fellow-servant, for whose negligence defendant was liable.

Mines—Master and Servant—Safe Place to Work—False Information by Vice-principal.

3.   The rule that a master is not bound to provide and maintain a safe place for his servants to work, where they are creating the place, and when it is constantly being changed in character by their labor, and becomes dangerous solely by their negligence, did not justify a vice-principal in giving false information to plaintiff, a miner, to the effect that an unexploded blast in the mine, left by a former shift of workmen, had been exploded before plaintiff went into the mine at the time he was injured.

Mines—Master and Servant—Vice-principal—False Information—Negligence.

4.   *Held,* that plaintiff, a miner, in an action for personal injuries, was entitled to rely on the information of the person in charge of the operating department of the mine—a vice-principal—that a charge of dynamite in a certain hole had been exploded, when in fact it had not, and was not guilty of negligence in working in the mine on the assumption that the explosion had taken place.

*Appeal from District Court, Broadwater County; W. R. C. Stewart, Judge.*

ACTION by E. C. Allen against R. A. Bell.    From a judgment in favor of defendant, plaintiff appeals.    Reversed.

*Mr. T. J. Walsh,* for Respondent.

There is little doubt that in the earlier history of the development of the law of the liability of the master for injuries suffered by the servant in the course of his employment, the respondent would be held answerable for any delinquency on the part of Blair resulting in injuries to any other servant of respondent, merely by reason of his position of superiority and command in and about the operations being carried on. But in the light of the more recent judicial consideration of the subject, it is impossible to so hold.    In fact the language used and the conclusions reached by many eminent courts in cases of this character have practically eliminated from the

problem the question of superiority of position and right of command. (*City of Minneapolis* v. *Lundin,* 58 Fed. 525.)

It was held in the above case that the foreman was not a general or special vice-principal; that if the place was safe when the man was put to work in it, the duty of the city in regard to furnishing him a safe place in which to work was discharged, and that if it became dangerous in the progress of the work, by reason of the negligence of the foreman or any of the workmen, the danger was a risk assumed in his employment—the negligence of a fellow-servant for which no recovery could be had.

The liability of the master is to be determined by the character of the act in respect to which negligence is claimed, rather than by a consideration of the position held by the person charged with negligence. (*What Cheer Coal Co.* v. *Johnson,* 56 Fed. 810.) If any liability rests upon the respondent in this case, it is only because of the character of the act in respect to which it is claimed he was negligent, and not because of the position Blair occupied. (Note to *Stevens* v. *Chamberlain,* 51 L. R. A. 534.)

The master's duty is done if the place is safe when the servant goes to work and remains so except as it becomes dangerous during its progress by reason of the negligence of fellow-servants or otherwise. (*Durst* v. *Carnegie etc. Co.,* 173 Pa. St. 162, 33 Atl. 1102; *Cleaveland etc. Co.* v. *Brown,* 73 Fed. 970, 34 U. S. App. 759, 20 C. C. A. 147; *Baird* v. *Reilly,* 92 Fed. 884, 63 U. S. App. 157, 35 C. C. A. 78; *Armour* v. *Hahn,* 111 U. S. 313, 4 Sup. Ct. 433; *O'Connell* v. *Clark,* 22 App. Div. 466, 48 N. Y. Supp. 74; 2 Labatt on Master and Servant, 588, and notes.)

The negligence complained of is the failure of Blair to tell appellant that the "missed hole" claimed to have existed from the day preceding had not been fired. Was that a duty that is personal to the master, absolute in him, a nondelegable duty, or was it a duty that was delegated and could be delegated to the fellow-servants of the appellant, because arising out of a condition occurring in the progress of the work? The answer may be found in *Mast* v. *Kern,* 34 Or. 247, 75 Am. St. Rep.

580, and note, 54 Pac. 950. The decision in this case was rendered before *Railway Co.* v. *Ross* was expressly overruled by the supreme court of the United States, as it was in *New England etc. Co.* v. *Conroy,* 175 U. S. 323, 20 Sup. Ct. 85, though it had been, in principle, repudiated some time before, as suggested in the opinion.

In the investigation of these questions it is always important to note the date at which decisions cited were decided. The influence of the decision in the *Ross Case* upon judicial action was widespread. The supreme court of the territory of Montana, being bound by the decisions of the supreme court of the United States, followed it in determining the question of responsibility in the case of *Kelly* v. *Cable Co.,* 7 Mont. 73, 14 Pac. 633, but, guided by the light of the later decisions of the same august tribunal this court abandoned the superior servant doctrine and declared the law to be as announced in *Railroad* v. *Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, *Railroad* v. *Hambly,* 154 U. S. 349, 14 Sup. Ct. 983, and *Railway* v. *Peterson,* 162 U. S. 346, 16 Sup. Ct. 843, when it came to decide the cases of *Goodwell* v. *Montana Cent. Ry. Co.,* 18 Mont. 293, 45 Pac. 210, and *Hastings* v. *Montana Union Ry. Co.,* 18 Mont. 495, 46 Pac. 264.

The following cases establish that there was no absolute, personal, nondelegable duty upon the respondent to notify the appellant when he went back to work in the shaft, that there was in the bottom of the shaft an undischarged blast or "missed hole": *Johnson* v. *Portland etc. Co.,* 40 Or. 436, 67 Pac. 1013; *Donovan* v. *Ferris,* 128 Cal. 48, 79 Am. St. Rep. 25, 60 Pac. 519; *Stephens* v. *Doe,* 73 Cal. 27, 14 Pac. 378; *McLean* v. *Blue Point,* 51 Cal. 255. In the case of *Alaska Treadwell Co.* v. *Whelan,* 168 U. S. 68, 18 Sup. Ct. 40, the supreme court of the United States held that the rule of its decisions which was followed and adopted by this court in *Goodwell* v. *Montana Cent. Ry. Co.* and *Hastings* v. *Montana Union Ry. Co.* required it to deny the right of recovery under the facts in that case. (*Davis* v. *Mining Co.,* 117 Fed. 122; *Wiskie* v. *Montello etc. Co.,* 111 Wis. 443, 87 Am. St. Rep. 885, 87 N. W. 461.)

The duty to notify of "missed holes" is not a nondelegable duty, and not being such, no matter upon whom it fell, whether on Blair or the shift boss or the men engaged in drilling and blasting, it was a part of the duty of the fellow-servants of appellant, for whose default the respondent is not liable. (*Anderson* v. *Daly Min. Co.,* 15 Utah, 22, 50 Pac. 815.)

Appellant was engaged in a most hazardous calling, and he was called upon for his own protection and those who followed him in the work to exercise the highest degree of care and caution to locate the "missed hole," if there was one. The judgment in this case is right, because the appellant's want of due care was a proximate cause of the injury of which he complains, and although the rule is recognized that contributory negligence is an affirmative defense, this court has repeatedly said there is an exception to or a corollary of the rule—namely, that when the evidence of the plaintiff "raises a presumption of contributory negligence, the burden of proof is immediately upon him. In such case it devolves upon the plaintiff, as of course, to clear himself of the suspicion of negligence that he has himself created." (*Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 534, 57 Pac. 140; *Cummings* v. *Helena etc. R. Co.,* 26 Mont. 451, 68 Pac. 852.)

*Mr. C. B. Nolan,* and *Messrs. Toole & Bach,* for Appellant.

Blair, exercising supreme authority, as the evidence discloses, cannot, in the light of the adjudicated cases, be viewed in any other light than that of vice-principal. (*Kelly* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633; *Berg* v. *Boston & Montana Con. Copper etc. Min. Co.,* 12 Mont. 212, 29 Pac. 545; *Kelley* v. *Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273; *Goodwell* v. *Montana Cent. Ry. Co.,* 18 Mont. 293, 45 Pac. 210; *McDonough* v. *Great Northern Ry. Co.,* 15 Wash. 244, 46 Pac. 334; *Burn* v. *Hoag,* 37 Cal. 340; *Faulkner* v. *Mammoth,* 23 Utah, 437, 66 Pac. 799; *Durst* v. *Carnegie Steel Co.,* 173 Pa. St.162, 33 Atl. 1102; *Newbury* v. *Getchell Lumber etc. Co.,* 100 Iowa, 441, 62 Am. St. Rep. 582, 69 N.W.743; *Zintek* v. *Stimson Mill Co.,* 6 Wash. 178, 32 Pac. 997, 33 Pac. 1055, 9 Wash. 395, 37 Pac. 340; *Consolidated Kansas City Smelting etc. Co.* v. *Peter-*

*son,* 8 Kan. App. 316, 55 Pac. 673; *Deep Mining etc. Co. v. Fitzgerald,* 21 Colo. 533, 43 Pac. 210. See exhaustive note on this subject, 51 L. R. A. 513-622.)

We respectfully submit, under the authorities cited, whether we gauge Blair by the character of the duties which devolved upon him or by his grade of employment, he is the representative of the respondent rather than the fellow-servant of the appellant.

"Where the negligence of a fellow-servant and a mine owner contribute to the injury, the master is responsible." (*Hancock v. Keene,* 5 Ind. App. 408, 32 N. E. 329; *De Weese v. Meramec Iron Min. Co.,* 128 Mo. 423, 31 S. W. 110; *Cerrillos Coal Co. v. Deserant,* 9 N. Mex. 49, 49 Pac. 807; *Handley v. Daily Min. Co.,* 15 Utah, 176, 62 Am. St. Rep. 916, 49 Pac. 295; *Costa v. Pacific Coast Co.,* 26 Wash. 138, 66 Pac. 398; *Deserant v. Cerrillos Coal Co.,* 178 U. S. 409, 20 Sup. Ct. 967.)

Blair, in the exercise of his supervisory powers, prevented the discharge of the missed hole. In the ordinary course of prosecuting the business, the danger from the missed hole would be removed and the injuries to the plaintiff could not have occurred. It cannot be successfully gainsaid that this interference was not the act of a fellow-servant. It was the exercise of an authority primarily vested in the master. This interference created a lurking danger not possible if the ordinary methods of carrying on operations were observed. It was a danger known to the superintendent and not known to the employee. It was the duty of the superintendent, under those circumstances, to advise the employee of the danger, and his failure to do so fixes the responsibility of the master. (*Harder Coal Co. v. Schmitt,* 104 Fed. 282; *Shannon v. Consolidated Tiger Min. Co.,* 24 Wash. 119, 64 Pac. 169; *McMahon v. Ida Min. Co.,* 95 Wis. 308, 60 Am. St. Rep. 117, 70 N. W. 478; *Consolidated Coal Co. v. Wombacher,* 134 Ill. 57, 24 N. E. 627; *Brazil Block Coal Co. v. Young,* 117 Ind. 520, 20 N. E. 423; *Andrews v. Tamarack Min. Co.,* 114 Mich. 375, 72 N. W. 242.)

MR. COMMISSIONER POORMAN prepared the opinion for the court.

During the spring and summer of 1901 the defendant was the owner of and was operating the East Pacific mine. One D. E. Blair was in the immediate charge of the mine, and plaintiff was a miner working at the bottom of the shaft when a blast was exploded, causing the injury complained of. At the close of plaintiff's evidence on the trial of the case, the defendant moved for a nonsuit, which motion was sustained. Judgment was entered for defendant, and plaintiff appeals.

In considering the case, every fact which the evidence tends to prove must be admitted proved. (*McCabe* v. *Montana Central Ry. Co.,* 30 Mont. 323, 76 Pac. 701; *Nord* v. *Boston & Montana Con. etc. Min. Co.,* 30 Mont. 48, 75 Pac. 681.) The evidence tends to prove that this mine was operated by means of numerous tunnels, drifts, crosscuts, stopes, and shafts. About forty men were employed in different parts of the mine. Blair had charge of the operating department of the entire mine; was authorized to hire and discharge men; directed them where, when, and how to work. They consulted him or the shift boss about material required. Blair's authority was superior to the shift bosses'. No one was over him except the owner, Bell. Bell was at the mine a part of the time, but Blair's authority remained the same during Bell's presence. Bell directed when new work was to be commenced, but Blair had charge of the work when commenced. Aside from this direction by Bell, Blair's authority was supreme. His duty was solely that of direction and supervision as to the working of the entire mine. He gave the men their time, but did not pay them, as that was done by the financial department. He had charge of the teamsters, and told them what ore to ship, but had nothing to do with handling the returns. That was also done by the financial department. The shaft in which the accident occurred was in tunnel No. 4, about two thousand feet from the mouth of the tunnel. The owner of the mine was anxious to have the sinking of this shaft expedited, and for that reason Blair spent more time at the shaft than he did at other places about the mine. This was a double compartment shaft, four and one-half by eight feet in the clear, and at the time of the accident had attained a depth of about one hundred and thirty feet. A ma-

chine drill was used in making the holes, and the rock was blasted by the use of dynamite. Three shifts, of two men each, were employed, each shift working eight hours. On June 30, 1901, the Johnson shift commenced at 7 o'clock in the morning, continued until 3 in the afternoon, and was succeeded by the Allen (plaintiff) shift, which commenced work at 3 o'clock p. m., and continued until 11 o'clock p. m. At the time this Allen shift commenced work, they were informed by the preceding shift and also by Blair that there was a missed hole, when Allen said, "I will go down, clean out, and blast it." Blair then remarked: "It is in the west end of the shaft, and you will be drilling in the east end, and it will not be in your way. Let it go, and I will see that it is blasted when the next round is blasted." The custom prevailing at the mine in case of a missed hole was that the same should be discovered and blasted by the succeeding shift. The Allen shift did not search for the missed hole, and did not blast it, but, in obedience to the orders of Blair, continued their work in the east end of the shaft. At 11 o'clock p. m., when this shift went off duty, it was succeeded by the unknown shift, which was informed of the existence of this missed hole. This unknown shift continued work from 11 o'clock p. m. June 30th, until 7 o'clock a. m., on July 1st, and was again followed by the Johnson shift at that hour. The Johnson shift was not notified of the fact that this missed hole had not been discovered and blasted. This shift was again succeeded by the Allen shift at 3 o'clock in the afternoon of July 1st. The Allen shift at this time received no notice from Johnson that the missed hole had not been blasted, but prior to the time when Allen went down into the shaft, he inquired of Blair how everything was below, and was informed that it was all right, that all the holes had been blasted, and was also instructed by Blair to muck out what dirt and debris remained in the bottom of the shaft. In cleaning out this dirt and debris, the blast was discharged by a blow from a pick in the hands of Allen, resulting in the injury complained of. There had been blasting done in the mine between the time that Allen went off duty at 11 o'clock on the 30th of June and the time when he came on duty on the 1st of July.

But two questions are presented: 1. Was Blair a vice-princi-pal of defendant, or was he, with reference to the matters concerning which it is claimed he was negligent, a fellow-ser-vant of the appellant? 2. Was the appellant himself negligent?

It is familiar law that a servant, in the absence of statute, as-sumes as one of the incidents of his employment the risks of injury from the negligence of a fellow-servant, because the master cannot by the exercise of the greatest care and caution guard against such negligence. (*Goodwell* v. *Montana Cen-tral Ry. Co.,* 18 Mont. 293, 45 Pac. 210; *Mast* v. *Kern,* 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 950, and cases cited.)

Decisions of courts differ as to the method of determining when one employee is the fellow-servant of another employee. These conflicting decisions have given rise to two distinct rules: 1. The superior servant criterion, based upon the rank or grade of the employee. Under this rule, when the master has given to an employee supervisory control and management of his busi-ness, or some particular department thereof, such employee, while so acting, stands in the place of the master as to those things under his direction and supervision, and for his negli-gence the master is liable; 2. That the character of the act in the performance of which the injury arises, and not the rank or grade of the employee, determines his relationship to other employees, and that, if the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank or grade of the employee to whom it is intrusted, but, if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant, whatever his rank, and for his negligence the master is not liable. (*Mast* v. *Kern,* 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 950.)

Both of these rules cannot be applied at the same time, though one may aid in expounding the other. Under the first rule the party in charge cannot say, "I speak now as your master," and again, "I speak now as your fellow-servant," for this shifting would destroy the distinction between the rules, and would de-stroy the superior servant theory. Under this first rule, if the party in charge stands in the place of the master, he is the master

as to the other employees. The character of the service performed by him is considered for the purpose of determining the grade or rank, but when this is established the superior servant cannot, by engaging in the performance of labor ordinarily performed by those under him, devest himself of this character, and his commands respecting the labor to be performed by the other employees in the department where he stands as the representative of the master have the same effect as though emanating directly from the master. Mere superiority of service, it is true, does not always constitute a superior servant a viceprincipal. It has been repeatedly decided that a mere foreman or shift boss is a fellow-servant with those working under his direction and supervision, although the shift boss or foreman has the authority to hire and discharge men. (*Kelley* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633, is overruled on this point by *Goodwell* v. *Montana Cent. Ry. Co.,* above, and *Hastings* v. *Montana Union Ry. Co.,* 18 Mont. 493, 46 Pac. 264.)

Under the second rule, a general manager of a railway system or of a mine, whether title vests in a corporation or in an individual, may, under orders or of his own volition, engage temporarily in some labor ordinarily performed by other employees, and thus become a fellow-servant with such other employees; and the master is not liable for any damage resulting from his negligence while so engaged, although he is not at any time devested of his power and authority as a vice-principal, and the other operatives cannot prevent him from engaging in such labor, nor dictate to him how he shall perform it, nor refuse to obey his commands while he is performing it, for he still retains his authority as vice-principal. On the other hand, the ordinary operative may by orders *only* engage in the performance of duties which should be done by the master, and the master is then liable for his negligence while so engaged.

Decisions respecting the fellow-servant doctrine are collected and classified in *Northern Pac. R. R. Co.* v. *Hambly,* 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, and in *Mast* v. *Kern, supra.*

The *Goodwell Case, supra,* was decided after the *Ross Case* (*Chicago, M. & St. Paul Ry. Co.* v. *Ross,* 112 U. S. 377, 5 Sup.

Ct. 184, 28 L. Ed. 787) had been modified by the decision in B. & O. Ry. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, and the Hambly Case, supra, and contains this statement: "To these examples where the superior is deemed a principal rather than an agent, may be added the superintendent of a mine, as was decided in Kelly v. Mining Co., 16 Mont. 484, 41 Pac. 273."

Under the facts as disclosed by this evidence, which here stand admitted, there is no doubt that Blair was a vice-principal, whichever rule may be followed.

It is also a rule well established that an employee assumes. the ordinary risk of his employment (McCabe v. Montana Cent. Ry. Co., above cited), and that the rule that a master must use reasonable diligence to provide and maintain a safe place to work does not apply to a case where the employees are creating the place of work, and when it is constantly being changed in character by their labor, and becomes dangerous only by the carelessness or negligence of the workmen (Shaw v. New Year Gold Mines Co., 31 Mont. 138, 77 Pac. 515). But this rule does not justify a master in neglecting to give information known to him, or with the knowledge of which he is charged, regarding concealed danger. Much less does it justify him in giving false information regarding any danger. When Blair ordered Allen to depart from the custom of searching for and blasting missed holes, and directed him to leave the missed hole, and said that he (Blair) would see that it was set off when the next. round was blasted, he took upon himself the duty of seeing that this was done, for he knew that Allen relied upon that statement. When Allen came on duty again he inquired about this missed shot, and was informed by Blair that it had been blasted. Blair knew that Allen relied upon this information, and, by reason of relying upon it, as appears from this evidence, he was injured. It is also in evidence that it was the custom that Blair was notified of the existence of missed shots, and that he frequently notified the oncoming shift of their existence. Under these facts, Allen was not negligent in relying upon the information given him by Blair, nor did he violate any duty or sub-

ject himself to the charge of carelessness by obeying tthe orders of his superior.

We think the evidence sufficient to make it the duty of the court to submit the case to the jury. Consequently we recommend that the judgment be reversed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.

Rehearing denied April 4, 1905.