ROACH, APPELLANT, *v.* RUTTER, RESPONDENT.

(No. 2,732.)

(Submitted December 13, 1909. Decided December 17, 1909.)

[105 Pac. 555.]

*Contract of Employment—Nonsuit—When Order Premature—*
*Evidence.*

Nonsuit—When Order Premature.
1. While the district court may, at any time it becomes apparent
from plaintiff's testimony that he cannot recover in any event, order
a nonsuit, it was error to so direct in an action on a contract of
employment, before plaintiff had rested his case, and where he had
positively testified that he had been employed by defendant and had
performed his part of the agreement, thus establishing his *prima
facie* right to recover.

Same—What Deemed Proved.
2. Upon a motion for a nonsuit those facts will be deemed proved
which the evidence tends to prove.

*Appeal from District Court, Valley County; Jno. W. Tattan,*
*Judge.*

ACTION by N. A. Roach, against J. H. Rutter. From a judg-
ment for defendant, and from an order denying a new trial,
plaintiff appeals. Reversed and remanded.

*Mr. T. E. Crutcher,* for Appellant.

*Messrs. Hurd & Lewis,* for Respondent.

Cause submitted on briefs of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that on the twenty-fifth
day of June, 1904, the defendant employed plaintiff to watch
over a certain house and the goods contained therein, ''and
promised that he should receive as pay therefor the sum of $3
per day, the same pay as a deputy sheriff''; that under said
contract of employment he cared for the house and goods for a

period of fifty-three days; "that for said services the defendant promised to pay him the sum of $159." Then follows an allegation of demand and refusal to pay, and a prayer for judgment in the sum of $159, with interest. The defendant filed a general demurrer to the complaint, and, upon the same being overruled, filed an answer denying every allegation of the complaint. The cause was tried before the district court of Valley county sitting with a jury. After plaintiff had personally given certain testimony (it does not appear that his examination was concluded), and before he had rested his case, the defendant's counsel orally interposed the following motion for a nonsuit: "We will move the court to grant a nonsuit on the ground that the proof does not conform to the allegations of the complaint, and on the further ground that it is shown that the complaint is within the statute of frauds." The motion was granted, and plaintiff saved an exception. Afterward judgment was entered in favor of the defendant, and a motion for a new trial was overruled. These appeals are from the judgment and order.

One ground of the motion for a new trial was "on account of the irregularity in the proceedings of the court in entertaining and granting a motion for a nonsuit before plaintiff had rested, and whilst plaintiff's first witness was on the stand undergoing cross-examination, and before plaintiff had an opportunity to introduce two other witnesses whom he proposed to have testify, and in granting said order prematurely, by which plaintiff was prevented from having a fair trial." At the hearing of the motion plaintiff's counsel presented his own affidavit, in which he set forth that he intended to call the defendant himself to prove that the contract was substantially as set forth in the complaint. He also alleged that, if opportunity had been given for redirect examination, he could have explained any apparent discrepancies in plaintiff's testimony on cross-examination.

The plaintiff testified, in substance, as follows: "On or about the twenty-fifth day of June, 1904, the defendant employed me to watch over a house and the goods contained therein. He

asked me to look after the goods and to report to him. I kept
the keys and saw that no one entered the building during the
daytime, and I slept in the building during the night and
watched it all the time, cared for it from June 25 until the 16th
of August, fifty-three days. At the end of that time I was
relieved, and I demanded my pay. I demanded my fees of
Mr. Rutter and the sheriff, Cosner. I guess when I presented
my bill to the sheriff's office I claimed $6 per day, $360 for
fifty-three days. I followed Mr. Rutter's instructions. I
couldn't make demand on anybody else except on the sheriff's
office. No; I made no demand. I couldn't make any other de-
mand than the demand I made. I could demand. I wrote to
the sheriff. The demand was made to the sheriff, and was an-
swered by Mr. Rutter himself. I demanded my fees, and his
answer was that Mr. Duffy would settle for it. Mr. Rutter in-
structed me to turn the goods over to Mr. Duffy. I have a let-
ter here signed by Harry Cosner, by J. H. Rutter, undersheriff
of Valley county. I guess the demand was made on Mr. Cos-
ner, and not on Mr. Rutter. I never made any demand on
Rutter personally in any way whatever, only simply in the
complaint, and never went to him to make a personal demand.
There was a demand made by the attorney I employed. The
reason I presented the bill for $304.50 to the sheriff instead of
Mr. Rutter was that, according to his instructions, I was to
report to the sheriff. I was to report to the sheriff when I
turned the goods over. I was not to turn the goods over until
I got orders from the sheriff's office. I presume I was work-
ing for the sheriff through Mr. Rutter. I was following Mr.
Rutter's instructions. The services went to him. I would not
have been watching the building if I had not been working for
Mr. Rutter. I was working for Cosner through Mr. Rutter.
I would not have been performing services unless it had been
for Mr. Rutter. I performed services for J. H. Rutter, as I have
stated. When I presented my bill for services, I presented it
to the sheriff for $304.50. The other $159 was for staying in
the building nights. Q. You say you were to get $3 per day?
A. That is what he told me I would get. Q. When did Rutter

say he would pay you the $3 a day that you say he agreed to pay you? A. He just said that I would receive that. He did not say directly who I would receive it from. Q. He did promise to pay you $3 per day, did he? A. He didn't promise to pay me, but that I would receive that.'' The only knowledge we have from the record as to what the sheriff's attitude toward the plaintiff's claim was is derived from a statement made by plaintiff's counsel during the course of examination of his client that he ''disclaimed all liability,'' and plaintiff's statement that in answer to a written demand upon the sheriff, Rutter answered that ''Duffy would settle for it.''

The principal contention of the appellant in this court is that the district court erred in granting the motion for a nonsuit before his own examination was completed, and before he had been given an opportunity to offer all of his evidence. The first ground of the motion for a nonsuit was, in effect, as we understand it, that there was a failure of proof on the part of the plaintiff; and the second was undoubtedly designed to comprehend the claim that the testimony disclosed an oral undertaking on the part of the defendant to answer for the debt, default, or miscarriage of the sheriff. We are not advised as to what view the trial court entertained with reference to the two grounds of the motion; but we gather from respondent's brief that his contention regarding the first ground is that plaintiff's testimony disclosed the fact that he was in the employ of the sheriff, and not of Rutter, and so understood his situation. We have carefully studied the testimony and feel justified in saying that there is some ground for concluding that this may have been the case. The testimony in substance is meager and unsatisfactory. If it clearly disclosed the state of facts which respondent's counsel assumed that it did, the court would undoubtedly have been justified in acting upon it at any time when it became apparent that the plaintiff could not, in any view of his testimony, recover. Many cases may be found in the books where the plaintiff literally ''testified himself out of court.'' But we are not prepared to say that this plaintiff had done so at the time defendant's motion was granted. He

had testified positively that he was employed by the defendant and had performed his part of the agreement. This established his *prima facie* right to recover. But, the respondent contends, the statement that he would receive $3 per day cannot be construed as a promise on defendant's part to personally pay him that sum, and therefore there was a failure to prove an express contract as to the rate of compensation. We think this statement, if made, might or might not be properly so construed dependent upon the other facts and circumstances in the case. At any rate, the testimony was sufficient to show an express contract that someone, either the defendant or the sheriff, would pay that rate of compensation. The only question was as to who became obligated, Rutter or the sheriff. We think, as did the court below, that the complaint states facts sufficient to constitute a cause of action. There is an allegation therein "that for said services the defendant promised to pay him the sum of $159." "In general, when a person acts and contracts avowedly as an agent of another, who is known as the principal, his acts and contracts, within the scope of his authority, are considered the acts and contracts of the principal, and involve no personal liability on the part of the agent." (1 Am. & Eng. Ency. of Law, 2d ed., p. 1119.) The presumption is that an agent intends to bind his principal, and not himself. On the other hand, the books contain numerous cases which declare the general rule that whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally liable to the person with whom he is dealing for or on account of his principal. (See *Kroeger* v. *Pitcairn*, 101 Pa. 311, 47 Am. Rep. 718; *Feeter* v. *Heath*, 11 Wend. (N. Y.) 479; *Charles* v. *Eschleman*, 5 Colo. 107; *Roberts* v. *Button*, 14 Vt. 195; *Meech* v. *Smith*, 7 Wend. (N. Y.) 315; *Myers T. Co.* v. *Keeley*, 58 Mo. App. 491; *Lewis* v. *Reed*, 11 Ind. 239; *Dale & Banks* v. *Donaldson L. Co.*, 48 Ark. 188, 3 Am. St. Rep. 224, 2 S. W. 703; see, also, *Lawson* v. *Cobban*, 38 Mont. 138, 99 Pac. 128.) And it seems that even a public officer, dealing in good faith with persons having

full knowledge of the extent of his authority, or persons who
have equal means of knowledge with himself, may become indi-
vidually liable where the intent to incur personal responsibility
is clearly expressed. (*Mann* v. *Richardson,* 66 Ill. 481.)

According to his testimony, the plaintiff here was placed in a.
peculiar position. When, as he says, he made a written demand.
upon the sheriff, Rutter, in the name of the sheriff, instructed
him to look to Duffy for his compensation. The record shows
no liability on the part of Duffy. The letter of the sheriff,.
written by Rutter, was an implied disavowal of responsibility
by both. This court, in the case of *Nord* v. *Boston & Mont.
Con. C. & S. Min. Co.,* 30 Mont. 48, 75 Pac. 681, said: "The
rule is well established that no cause should ever be withdrawn
from the jury unless the conclusion from the facts necessarily
follows, as a matter of law, that no recovery could be had upon
any view which could reasonably be drawn from the facts which
the evidence tends to establish." Upon a motion for a nonsuit
those facts will be deemed proved which the evidence tends to.
prove. (*Anderson* v. *Northern Pac. Ry. Co.,* 34 Mont. 181, 85
Pac. 884; *Allen* v. *Bell,* 32 Mont. 69, 79 Pac. 582.)

As has already been said, the matters in evidence at the time
of the motion for a nonsuit do not throw a very clear light
upon the situation of the parties with relation to each other.
It is not clear whether the defendant intended to bind himself
personally; and it may only be gathered by inference that he
was acting by virtue of a writ of attachment. The *ex parte*
showing of the plaintiff in support of his motion was to the ef-
fect that he could have explained upon redirect examination
the discrepancies in his former testimony and could have proved
by the defendant that the contract was substantially "as set
forth in the complaint." In the light of this showing, we are
of opinion that the motion for a new trial should have been
granted. The court erred in ordering a nonsuit under the cir--
cumstances disclosed by the record. What has been said ap-
plies equally as well to the second ground of the defendant's.
motion. The question thus presented may not properly be de-

termined until the plaintiff has had an opportunity to present his entire case.   In order that it may not be supposed that this court is of opinion that there is merit in the second ground urged, we will say that we have given it no consideration whatever.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*


Mr. Chief Justice Brantly and Mr. Justice Holloway concur.