MORELLI, Appellant, v. TWOHY BROS. CO. et al., Respondents.

(No. 3,860.)

(Submitted January 11, 1918.　Decided January 23, 1918.)

[170 Pac. 757.]

*Personal Injuries—Master and Servant—Fellow-servants—Vice-principal—Safe-place Rule—Mines and Tunnels—Assumption of Risk—Nonsuit.*

Trial—Nonsuit—What Deemed Proved.

　　1.　On motion for nonsuit, every fact is deemed proved which the evidence tends to prove.

Same—When Nonsuit not to be Granted.

　　2.　Nonsuit should not be granted if, viewed in the light most favorable to plaintiff, the evidence makes out a *prima facie* case.

　　[As to mere *scintilla* of evidence as sufficient to justify submission of cause to the jury, see note in Ann. Cas. 1914B, 472.]

Same.

　　3.　A case should never be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it.

Personal Injuries—Master and Servant—Fellow-servant—Vice-principal.

　　4.　Under the law of master and servant, a foreman may occupy the dual position of a fellow-servant with reference to certain work, and of the *alter ego* of the master in the doing of other acts and things, his status as either depending upon the character of his service and not upon the title he may bear.

Same—Safe-place Rule—Applicability.

　　5.　The safe-place rule is as applicable where the working place is constantly being changed by the labor of the servant himself,—as, for instance, in tunneling work,—as in any other, the degree of care required of the master with reference to a completed place in such a case being modified to the extent that the changing conditions wrought by the servant lessen his opportunities under the rule and increase the assumed risks of the servant.

Same—Fellow-servant—Vice-principal.

　　6.　A tunnel foreman whom plaintiff and his fellow-workmen were compelled to obey under penalty of discharge was the master's vice-principal, and not a fellow-servant.

Same—Assumption of Risk.

　　7.　Assumption of risk implies knowledge, or the means of knowledge, and appreciation of the danger on the part of the servant.

Same—Duty of Servant to Obey—Safe Place—Presumptions.

　　8.　Where a servant is ordered from place to place in a tunnel, he must obey, and cannot stop to examine whether his working place is safe; he has a right to presume that the master has performed his duty to see that it is safe.

Same—Making Dangerous Place Safe—Assumption of Risk.
9. Plaintiff was employed both as a miner and a timberman. He was injured by a fall of rock while working in the latter capacity, after a shot had been fired, and he and his fellow-workmen excluded from the tunnel during the time the foreman undertook to make the place safe for timbering. *Held,* that he was not prevented from recovering damages, under the principle that he assumed the risk of injury while making a dangerous place safe.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by Peter Morelli against the Twohy Bros. Company and another. From an order denying a new trial after judgment of nonsuit, plaintiff appeals. Reversed and remanded.

*Mr. E. K. Cheadle* and *Mr. Rudolf Von Tobel,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

The trial court sustained the motion of defendants for nonsuit upon two grounds, as stated in his ruling, namely: That plaintiff was engaged in making a dangerous place safe, and that the foreman was a fellow-servant of plaintiff. In doing so it committed error. (See *McAllister* v. *Rocky Fork Coal Co.,* 45 Mont. 433, 123 Pac. 696; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Ross,* 112 U. S. 377, 28 L. Ed. 787, 5 Sup. Ct. Rep. 184; *Gregory* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 42 Mont. 551, 113 Pac. 1123; *Corn Products Refining Co.* v. *King,* 168 Fed. 892, 94 C. C. A. 304; *Smith* v. *Illinois Collieries Co.,* 155 Ill. App. 148; *Wahlquist* v. *Maple Grove Coal & Min. Co.,* 116 Iowa, 720, 89 N. W. 98; *Hamm* v. *Bettendorf Axle Co.,* 147 Iowa, 681, 125 N. W. 186; *Jacobson* v. *Hobart Iron Co.,* 103 Minn. 319, 114 N. W. 951; *Griffin* v. *Fredonia Brick Co.,* 84 Kan. 347, 40 L. R. A. (n. s.) 1088, 114 Pac. 217; *Reid Coal Co.* v. *Nichols* (Tex. Civ. App.), 136 S. W. 847.)

*Mr. Chas. J. Marshall,* for Respondents, submitted a brief, and argued the cause orally.

It is not the duty of the master to warn the servant of dangers of which the master does not know, or to warn him of dangers

of which the servant is already aware.   (*Therriault* v. *England*, 43 Mont. 376, 116 Pac. 581; *Kuphal* v. *Western Montana Flouring Co.*, 43 Mont. 18, 114 Pac. 122; *Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843.)   It is the duty of the master to warn the servant of dangers, unless they are known and appreciated by the latter, or so obvious that a reasonable man would have known and appreciated them.   (*Domitrovich* v. *Stone & Webster Engr. Corp.*, 44 Mont. 7, 118 Pac. 760.)   A servant assumes all the usual and ordinary risks attendant upon his employment, not including risks arising from negligence of the master, and he assumes the latter as well if he knows of the defects from which they arise and appreciates the dangers which flow from such defects.   (*Fotheringill* v. *Washoe Copper Co.*, 43 Mont. 485, 117 Pac. 86.)   The appellant assumed the risk in this instance, he having equal opportunity with the shift boss of obtaining knowledge of the conditions prevailing.   (*Thurman* v. *Pittsburg & Mont. C. Co.*, 41 Mont. 141, 108 Pac. 588; *McQueeny* v. *Chicago, M. & St. P. Ry.*, 120 Iowa, 522, 94 N. W. 1124; *Larsson* v. *McClure*, 95 Wis. 533, 70 N. W. 662; *Showalter* v. *Fairbanks Co.*, 88 Wis. 376, 60 N. W. 257; *Wright* v. *Pacific Coast Oil Co.*, 6 Cal. Unrep. 84, 53 Pac. 1086; *Walker* v. *Scot*, 67 Kan. 814, 64 Pac. 615; Labatt's Master and Servant, sec. 1177.)

Where a person is working at an occupation the prosecution of which creates the dangers, he assumes the ordinary risks of the dangers which he has created.   (*Thurman* v. *Pittsburg & Mont. C. Co.*, 41 Mont. 141, 108 Pac. 588; *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Friel* v. *Kimberly-Mont. Gold Min. Co.*, 34 Mont. 54, 85 Pac. 734.)   The servant assumes risk from changing condition of working place during progress of work.   (*Omaha Packing Co.* v. *Sanduski*, 155 Fed. 897, 19 L. R. A. (n. s.) 359, 361, 84 C. C. A. 89.)   Actual knowledge of servant of danger is not necessary in order that he assume the risk.   If the circumstances are such that a reasonably prudent man ought to have known of the danger he will be charged with the knowledge.   (*Anderson* v. *Northern Pac. Ry. Co.*, 34 Mont. 181, 85 Pac. 884; *Molt* v. *Northern Pac. Ry.*,

*Co.,* 44 Mont. 471, 120 Pac. 809.)   A servant, who, from the length or character of previous service or experience may be presumed to know the ordinary hazard attending the proper conduct of a certain business, is not entitled, as an absolute right, to the same or similar notice of dangers incident to the employment, as if he were ignorant of, or inexperienced in, the particular work.   (*Omaha Bottling Co.* v. *Thieler,* 59 Neb. 257, 80 Am. St. Rep. 673, 80 N. W. 821; *Weed* v. *Chicago, St. P. M. & O. R. Co.,* 5 Neb. Unof. 623, 99 N. W. 827; *Central Granaries* v. *Ault,* 75 Neb. 249, 106 N. W. 418, 107 N. W. 1015.)   The duty of caring for the safety of a place in cases in which the work the servants are employed to do, necessarily changes the character of the place as to safety, as the work progresses, is a duty of the servants to whom the work is intrusted, and it is not the duty of the master.   (*American Bridge Co.* v. *Seeds,* 144 Fed. 605, 11 L. R. A. (n. s.) 1041, 75 C. C. A. 407.)   The term "assumed risk" includes generally any form of assumed risks, that is to say, risks ordinarily incident to the work, as well as the risks not so incident but arising from the circumstances that the danger was a known one.   (*International & G. N. R. Co.* v. *Moynahan,* 33 Tex. Civ. App. 302, 76 S. W. 803, 804.)   The defense of assumption of risk is founded on contract and may be interposed against a servant, not because he agreed, but because it is a part of the law, which if abrogated must be by the legislature.   (*Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Faulkner* v. *Mammoth Min. Co.,* 23 Utah, 437, 66 Pac. 799, 801.)

A place under construction and constantly changing by the acts of the plaintiff or his fellow-servants is not such a place as the law requires the master to keep safe.   (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Lindvall* v. *Woods,* 41 Minn. 212, 4 L. R. A. 793, 42 N. W. 1020; *Allen* v. *Bell,* 32 Mont. 69, 79 Pac. 582; *Poorman Silver Mines* v. *Devling,* 34 Colo. 37, 81 Pac. 252; *Kallio* v. *Northwestern Imp. Co.,* 47 Mont. 314, Ann. Cas. 1915A, 1228, 132 Pac. 419; Labatt's Master and Ser-

vant, 1517, secs. 587, 588.)   Appellant cannot complain of the unsafety of a place which it is his duty to make safe, as appellant was employed to make the place safe by timbering.   (*Thurman* v. *Pittsburg & Mont. C. Co., supra; New Omaha, Thompson-Houston E. L. Co.* v. *Rombold,* 68 Neb. 54, 93 N. W. 966, 97 N. W. 1030; *Metallic Gold Min. Co.* v. *Watson,* 51 Colo. 278, Ann. Cas. 1913A, 1276, 117 Pac. 609, 611; *Kellogg* v. *Denver City Tramway Co.,* 18 Colo. App. 475, 72 Pac. 609; Labatt's Master and Servant, 2791.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

About July 9, 1913, Peter Morelli, a workman employed by Twohy Bros. Company (a corporation) in driving a tunnel on the line of the Chicago, Milwaukee & St. Paul Railway, was injured while in the discharge of his duties.   He brought this action to recover damages, but at the conclusion of his testimony the court granted a motion for nonsuit, withdrew the case from the jury, and rendered judgment dismissing his complaint. From an order denying him a new trial, plaintiff appealed.

On motion for nonsuit every fact is deemed to be proved which [1–3]  the evidence tends to establish, and if, viewed in the light most favorable to plaintiff, the evidence makes out a *prima facie* case, it follows that the trial court erred in granting the nonsuit.   (*Moran* v. *Ebey,* 39 Mont. 517, 104 Pac. 522.)   A case should never be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it.   (*Roach* v. *Rutter,* 40 Mont. 167, 105 Pac. 555.)

The plaintiff is a foreigner whose broken English is most difficult to understand.   His testimony covers more than fifty pages of the transcript and requires a critical analysis to determine its effect.   From the unequivocal statements of the witness and from the inferences fairly deducible from his testimony in its entirety, we find these facts:

Plaintiff and three other workmen, in sets of twos, first ran a drift on each side of the tunnel for a distance of twenty-five feet or more. They then drilled a set of holes in each drift about four feet back from the face or breast of the tunnel, and charged them ready for blasting. They were then dismissed from the tunnel by the foreman, who fired the holes. When the smoke and gas escaped, the foreman went into the tunnel, examined and tested the untimbered walls and also the breast, and picked down any loose rock which might fall and cause injury. When he had satisfied himself that the working place was reasonably safe, he ordered the plaintiff and other workmen to bring in the timbers which he assisted in putting in place. This order was followed on the day of the accident. After the foreman had assumed to pick down the loose rock he assured plaintiff and his coworkers that everything was all right, and ordered them to bring in the timbers, emphasizing the fact that he was in a hurry to get the set in place before the next shift came on duty. While putting this set of timbers in place, a rock from the breast of the tunnel fell upon the plaintiff, causing the injuries of which he complains. There was another officer over the foreman, but he never came in contact with the workmen and, so far as disclosed by this record, he was not in or about the tunnel at any time while the plaintiff was on duty. The foreman directed all the work of the men on his shift, ordered them when and where to work and what to do. He excluded them from the tunnel from the time the holes were loaded until he was ready to have the timbers set in place. The men under him, including plaintiff, were compelled to obey his orders under penalty of being discharged by him. The men received orders from no one else. He was apparently in exclusive control of the work while his shift was on duty, and it was upon his orders and under his directions that the work progressed. With reference to the particular tasks before his shift, the will of the foreman was supreme.

If we assume that while engaged in manual labor in setting [4] the timbers in place, the foreman was a fellow-servant of

the plaintiff in that particular work, it does not follow that he maintained that character with respect to the rest of the employment. One may occupy a dual position, as a common laborer with reference to certain work, and as the *alter ego* of the master in the performance of other acts and things. (Woods on Master and Servant, pp. 860, 863; 4 Thompson's Commentaries on the Law of Negligence, sec. 4918.) During the time the drifts were being run, the holes drilled and loaded, the foreman was apparently not a laborer, but the directing head. He was called "foreman," "boss," "shift boss," and "timber boss" indifferently. For convenience only we refer to him as foreman. But if he had been called "governor," "general manager," or "lackey," it would not have altered the situation or changed the character of his duties.

> "What's in a name? That which we call a rose
> "By any other name would smell as sweet."

His status as fellow-servant or vice-principal does not depend upon his lowly or high-sounding title, but upon the character of his service. (*Gregory* v. *Chicago, M. & St. P. Ry. Co.*, 42 Mont. 551, 113 Pac. 1123.) It is unfortunate that courts and text-writers should confuse the law by assuming to state as an abstract proposition that a foreman or shift boss is a fellow-servant of the men working under him. He may be a fellow-servant while he is performing acts of the common employment, as distinguished from acts which it is the duty of the master to perform; but no matter how menial his services, whenever he is required to perform a primary duty of the master, he becomes the master's *alter ego* for the performance of such service. In the absence of anything to indicate the contrary, it will be presumed that the duties which the foreman performed were the duties which his employment imposed upon him. The principal duty performed by him with which we are now concerned was directed to making reasonably safe the working place for the men engaged in setting the timbers. If this was a primary duty of the master, the person to whom its performance was delegated was *pro hac vice* the *alter ego* of the master for whose negligence

the master was liable. If the duty was present, it was either performed by the foreman or it was not performed at all.

There is not any controversy over the rule affecting the master's duty to exercise reasonable care to furnish his servant a [5] reasonably safe place in which to work; but it is contended that the rule has no application where the working place is changing constantly by the labor of the servant himself; in other words, there is no safe-place rule applicable under these circumstances, and support for this contention is found in broad, general expressions to that effect in numerous decisions, including some of our own. Indeed, the trial court with propriety might have justified its ruling by reference to the former decisions of this court if the language employed in them be accepted literally. Typical of those cases is *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515, wherein it is said that the safe-place rule should have no application to a case wherein it appears that the working place is changing continually by the labor of the men working upon it. Clearly this language has a broader significance than the meaning intended to be conveyed. To accept it literally would establish a rule of absolute nonliability of the master in practically every case of injury arising in mining, tunnel work and other underground operations, caisson work, construction work, the work of demolishing buildings, or any other work involving constant changes in the place of work itself. Such a rule might be exceedingly convenient to the master, but it would be inhumane to the workmen.

In 3 Labatt on Master and Servant, section 924, in speaking of these broad statements which at first blush seemingly suspend the rule in so large a percentage of negligence cases, the author says: "But it cannot be intended to concede this unqualified immunity to the master. Such a view is expressly repudiated in many cases and impliedly in many others." Among the cases referred to is *Allen* v. *Bell,* 32 Mont. 69, 79 Pac. 582, wherein liability was held to attach, notwithstanding the place of work was changing constantly by the efforts of Allen and his cowork-

ers. (See, also, *Kinsel* v. *North-Butte Min. Co.*, 44 Mont. 445, 120 Pac. 797.)

Whatever other courts may have intended by their use of such general language, the confusion in this state has arisen over the unfortunate form of expression, rather than over the principle intended to be stated; but, even if a reversal of our former decisions upon this point is necessarily involved, we content ourselves with saying that it is more desirable that the court be right than that its decisions harmonize in all respects.

It is to be remembered that we are now considering a common-law action, and that the safe-place rule is a rule of the common law. The common law makes no such exception in the application of the rule, and the courts are without authority to do so.

The employer is not an insurer of the safety of his workmen. He is required to exercise only ordinary care to provide for them a reasonably safe place for work, a place as reasonably safe as is compatible with its nature and surroundings. (*Masich* v. *American Smelting & R. Co.*, 44 Mont. 36, 118 Pac. 764, 2 N. C. C. A. 101.) But what is ordinary care in one instance may be gross negligence in another. The degree of care which would insure absolute safety to a workman employed in a tunnel driven through solid granite might make a veritable death-trap of a tunnel in loose rock or earth. The degree of care commanded by the rule is measured by the danger to be anticipated, the risk to be incurred, and the opportunity available for securing the workman's safety. A reasonably safe place presupposes such a condition as ordinary care, skill and diligence will secure under all the surrounding circumstances. The presence of constantly changing conditions in the working place does not operate to suspend the rule. It may vary the effects of the master's care, but it cannot operate to relieve him of all responsibility. His duty is not altered, but the degree of care required of him with reference to a completed place will be modified to the extent that the changing conditions wrought by the workman lessens his opportunities under the rule and increases the assumed risks of the servant.

Speaking of the application of the safe-place rule to a working place constantly changed by the labors of the servant, the supreme court of Washington said: ''But the servant does not assume the risk of every danger even in such cases. As in other cases, he assumes the risk of such dangers only as are necessarily incident to the work. The difference is not in the rule, but in the greater number of dangers incident to the work. The real question in any case is as to what constitutes reasonably careful conduct on the part of the master looking to reasonable safety for the men.'' (*McLeod* v. *Chicago, M. & P. S. Ry. Co.*, 65 Wash. 62, 117 Pac..749; see, also, Labatt, sec. 924, above.)

The observation of the court in the *Gregory Case* cited above [6] may be paraphrased and applied here. Under this rule, the foreman being the responsible agent of the company in carrying forward the work at the tunnel and for the time being in exclusive control so far as plaintiff was concerned, and performing a nondelegable duty, represented the master and was its vice-principal. (See, also, *Vasby* v. *United States Gypsum Co.*, 46 Mont. 411, 128 Pac. 606.)

The servant assumes the ordinary risks of his employment (sec. 5243, Rev. Codes), and though it may be conceded for the [7–9] purposes of this appeal that as a miner running the drifts and drilling and loading the holes, plaintiff assumed the risks arising from the constantly changing character of his working place, so far as his employment permitted him an opportunity to examine the same or make alterations looking to his greater security, it cannot be said that he likewise assumed the risk of injury from rocks falling from the breast of the tunnel when he had no opportunity for examination or correction, was excluded from the tunnel before the blasts were discharged which loosened the rocks, and was not permitted to re-enter until he was required to engage in other work. Assumption of risk implies knowledge or the means of knowledge, and appreciation of the danger. (*Alexander* v. *Great Northern Ry. Co.*, 51 Mont. 565, 154 Pac. 914.)

In no sense of the term can it be said that plaintiff was engaged in making a dangerous place safe. The breast of the tunnel was the dangerous place in this instance; but the timbering was designed to support the walls and roof, not the breast, which was being changed constantly as the work of excavation progressed. It is not difficult to imagine what progress would have been made in the excavation and timbering of this tunnel if every laborer engaged upon it had been his own boss, free to stop the work until by experimenting to his own satisfaction he had convinced himself that his working place was reasonably safe. In every enterprise of any magnitude where a considerable number of men are engaged upon the same work, it is not merely the privilege, but the duty, of the master to give orders and direct the places where the servant shall work, and the duty of obedience to such orders is imposed upon the servant, unless it is obvious that obedience would subject him to unusual dangers. (4 Labatt, sec. 1449d.) The safety of the workmen, as well as the dispatch of the business, requires that the master shall order and the servant obey, for upon no other basis would it be practical to carry forward work of any consequence. When a servant is ordered from one part of the work to another he cannot be expected to stop, examine and experiment for himself to ascertain whether his working place is safe. He has a right to presume that the master has performed his duty. (*Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29; *Schroder* v. *Montana Iron Works,* 38 Mont. 474, 100 Pac. 619.) The obligation of the servant begins where the duty of the master ends.

The facts of this case are somewhat peculiar. The plaintiff was engaged in a dual capacity—as miner and as timberman. Between the performance of these distinct duties, the master intervened and undertook the discharge of his primary duty to render reasonably safe the working place for the timbermen who followed in the wake of the miners, and the rights of this plaintiff as a timberman are not to be prejudiced by the fact that as a miner he was a factor which possibly and probably caused to be loosened the very rock which fell upon him. It would be a

monstrous doctrine which would hold him responsible for the safety of his working place in setting the timbers, when the master not only undertook to discharge the safe-place duty, but prevented the plaintiff from performing it for himself.

We think the plaintiff made out a *prima facie* case of actionable negligence.

It was a question for the jury to determine whether under all the circumstances the foreman exercised reasonable care to provide for the plaintiff, as a timberman, a reasonably safe place for his work.

The order is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, did not hear the argument, and takes no part in the foregoing decision.