GREGORY, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO. ET AL., APPELLANTS.

(No. 2,938.)

(Submitted February 2, 1911. Decided February 23, 1911.)

[113 Pac. 1123.]

*Personal Injuries—Master and Servant—Fellow-servants—Vice-principal—Safe Appliances—Extent of Duty of Master—Assumption of Risk—Variance—Appeal.*

Personal Injuries—Master and Servant—Fellow-servant Doctrine—Test.
  1.  *Held*, under the rule that the question whether an employee is a vice-principal or a fellow-servant is determinable, not by the grade of service assigned to him, but by the character of his service, that a head carpenter who, in the absence of defendant railway company's chief engineer, had general charge of its shop construction work at one of its stations, as well as the installation of machinery therein, who hired and discharged men, and was, for the time being, in exclusive control, represented the company and was, therefore, a vice-principal.

Same—Safe Appliances—Extent of Duty of Master.
  2.  An employer is not bound to select the best appliances for use by his employees, nor the safest, nor the best method of their operation; if at the time of its selection, the particular appliance is generally used for the same purpose, and operated in the same way, it being reasonably adapted to the purpose in hand, the master has fully discharged the duty incumbent upon him to furnish a reasonably safe appliance.

Same—Assumption of Risk.
  3.  Though a servant may act upon the assumption that the master has furnished him with reasonably safe appliances, or, if inexperi-

enced, will warn or instruct him so that he may understand and appreciate a given danger, he assumes the risks which are open and obvious to him, when they arise from the nature of the business in which he is engaged.

### Same—Pleading and Proof—Fatal Variance.

4. Plaintiff, a laborer, charged in his complaint that, owing to defendants' negligence in failing to furnish him a reasonably safe appliance to unload heavy machinery from a railway car, he was injured. The evidence showed that there was not any defect in the appliance used, but that the negligence, if any, consisted in a vice-principal ordering the machine to be started, without allowing plaintiff time to get out of reach of danger. *Held,* that there was a fatal variance between pleading and proof.

### Same—Appeal—Final Disposition of Cause by Supreme Court—When.

5. Where plaintiff on the trial of his personal injury action had full opportunity to introduce all the evidence he had in support of his cause of action, but failed to make a case for the jury, and the evidence introduced by defendant did not strengthen or supplement his proof, the supreme court on appeal will make such an order as will finally dispose of the cause.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by Charles Gregory against the Chicago, Milwaukee & Puget Sound Railway Company and others, to recover damages for personal injuries. Plaintiff had judgment, and the above-named defendant appeals from the judgment and from an order denying it a new trial. Reversed and remanded.

*Mr. H. H. Field, Mr. Geo. W. Korte,* of the bar of Seattle, Washington, and *Messrs. Scharnikow & Paul* submitted a brief in behalf of Appellants. *Mr. Korte* argued the cause orally.

In behalf of Respondent, there was a brief by *Mr. John H. Tolan* and *Mr. S. P. Wilson. Mr. Wilson* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover damages for a personal injury sustained by the plaintiff during the course of his employment by the defendants. At the trial it appeared that the

employment was exclusively by the Chicago, Milwaukee & Puget Sound Railway Company, the plaintiff disavowing any claim against the other defendant. The result was a verdict and judgment in favor of plaintiff against the first mentioned defendant. From the judgment and an order denying its motion for a new trial, it has appealed.

At the time of the accident, the line of defendant's road was yet in course of construction. Trains were not running except for the purpose of forwarding this work by the transportation and distribution of materials. There were in course of construction at Deer Lodge a roundhouse, car-shops, a warehouse, and such other buildings as would be needed in the operation of the road when completed. About a hundred men were engaged in this work. The plaintiff was employed as a common laborer. It was a part of his duty to assist in unloading from cars materials to be used in the work of construction and machinery to be installed in the shops. On January 31, 1909, the plaintiff, with several other men under the direction of one Mesnard, a foreman, were unloading machinery from a furniture car standing on a track near the car-shops. Most of the pieces were such as could be unloaded by hand with the aid of a skidway, which was built of ties and other timbers at one of the side doors of the car. In some instances heavy pieces were eased down by means of a rope passing through the opposite door of the car and snubbed to a rail in the track. A planing-machine was the last piece to be unloaded. It was of such size that it could not be taken through a side door. It weighed several thousand pounds. Another skidway, about twenty-two feet in length on the incline, was built up to the end door of the car. The machine, having been jacked up and put upon six-inch wooden rollers, was moved endwise to the door, ready to be balanced off on the skidway. The men were directed to ease it down by means of a snub line. For this purpose they used an inch rope doubled. One end was attached to the machine. The other, being passed back, was wrapped two or three times about a five-inch gas-pipe laid transversely through the side doors, and rest-

ing on two-inch wooden blocks placed on the floor against the facings of the doors nearest to the machine. It was intended that the gas-pipe should serve the purpose of a windlass, enabling the men by aid of the friction of the snub line as it passed around it, to hold the weight of the machine, and ease it down along the skidway on rollers. This device was adopted under the direction of one Long, who, it is alleged, was the superintendent of the defendant and had general charge of the work at Deer Lodge. During the unloading of the other machinery Mesnard had special charge. Long came to the car just at the time the men began to unload the machine, and thereafter assumed charge. He directed the plaintiff to see that the line was about the middle of the pipe, and that the strands did not run foul of each other. Other men were ready to push the machine out upon the skidway, and still others were outside to put rollers in place. When the order was given to balance off the machine and let it go, the plaintiff had moved the line to the middle of the pipe. He was in a stooping position, with his hand upon the line, a foot or eighteen inches from the bight in the line upon the pipe. Other men were detailed to hold back upon the rope. These were behind plaintiff. The rope moved rapidly. The plaintiff, failing to let go, had his hand caught in the bight, with the result that his arm was broken in two places. He was otherwise bruised and injured.

The amended complaint contains two counts, the same in all essential particulars, except that in the second count it is alleged specially that Long was the superintendent of the defendants, and had been intrusted with full power to direct the work of construction at Deer Lodge, and to provide all the instrumentalities necessary for that purpose. It is very long, and contains much repetition. The following excerpts are set out in the brief of counsel for plaintiff, as the specific charges of negligence upon which he relies:

"That the defendants carelessly and negligently caused the planer to be balanced over and down and upon said skidway without having any means, manner, method, or appliance to

control the same, and check its speed, and without having the same in check and under control, and that the same did then and there and because of the carelessness and negligence of defendants in not having control of the same, and in not having provided any means, manner, method or appliance to control the same, or to check its speed, with great force and violence run and fall down said skidway, wholly unchecked and beyond the control of defendants.  *  *  *   That thereupon, and because of defendants having negligently allowed said planer to run unchecked down said skidway, and because of defendants having placed the same on said skidway without having first provided means, manner, method, or appliance to check its speed, and without having the same in check and under control, the rope to which plaintiff was holding was jerked and pulled with great force before plaintiff was able to release his hold.  *  *  *  That it became and was the duty of the defendants to provide a snub that would check the said planer and control its speed as it rolled down said skidway, in order to prevent the same from running down said skidway with great force and violence, and causing injury to the servants of defendants and especially to this plaintiff, and likewise it was the duty of the defendants to provide means, manners, methods, instruments, and appliances to check the speed of said planer and control its speed when said planer was placed upon said skidway, and likewise it became and was the duty of defendants not to allow said planer to be placed upon said skidway to be lowered from said car to the ground without having first provided good and sufficient means, manners, methods, instruments, and appliances to check and control its speed as it was being lowered down said skidway, and it became and was the duty of the defendants not to allow said planer to roll down said skidway uncontrolled and unchecked, or with great force and violence.  *  *  *   That the defendants at the time said planer was lowered down and upon said skidway did not and had not provided any manner, means, methods, appliances, or instruments for controlling the speed of said planer or checking the same; and defendants did

not and had not provided any manner, means, methods, instruments, or appliances for checking the speed of said planer or controlling the same as it rolled down said skidway; that said defendants at the time of the injury of plaintiff did not have said planer in check, and did not have the same under control."

The defenses interposed are specific denials of all the allegations of the complaint except the corporate capacity of the defendant, with the usual allegations of contributory negligence and assumption of risk by the plaintiff, and that he was injured by the negligence of his fellow-servants.

Contention is made that the evidence is insufficient to justify the verdict. The question was raised by a motion for a directed verdict. Counsel discuss in their brief somewhat the question whether Long was a vice-principal or was merely a fellow-servant of the plaintiff. There is a conflict in the evidence as to whether he had charge of all the work at Deer Lodge, or whether he was only the head carpenter, and had charge of that branch of the work only. We think the evidence tends to show that while he was subject to the orders of Beattie, the chief engineer, when the latter was present, he was the responsible head of control acting for the defendant when Beattie was absent, as was the case at the time of the accident. He seems to have had general charge of the work of constructing the buildings and installing the machinery in the shops. In the absence of Beattie, his voice controlled in the hiring and discharging of men as well as in providing appliances for the work as it progressed; in other words, he was for the time being the managing agent for the defendant, charged with the performance of those duties which appertained exclusively to it as master and could not be delegated.

Under the rule heretofore recognized by this court, the question whether an employee is a vice-principal or a mere fellow-servant is to be determined, not by the grade of service assigned to him, but by the character of his service. The primary duty of the master is to exercise ordinary care and diligence to provide for his servant a reasonably safe place in which to work,

reasonably competent fellow-servants, and reasonably safe and suitable appliances and materials with which to do the work. (*Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131.) A corporation must of necessity perform these duties through agents, as may also a natural person. But in either case the employer is liable for any injury to an employee resulting from the negligence of such agent in performing the duties so intrusted to him. When the employer has discharged these obligations, the employee assumes all the risks ordinarily incident to the exercise of the particular employment, including the risks due to the negligence of his coemployees or fellow-servants, without regard to their grade or rank. The relations of master and servant were considered at length by the supreme court of the United States in *Baltimore & Ohio Ry. Co.* v. *Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, with the purpose of ascertaining the rule by which the relations between different employees must be determined. The rule was laid down as above stated; the court declaring the relations of the employer and employee to be "of a general nature and to be determined by the general rules of the common law." Subsequently it considered the same question in *Northern Pac. R. R. Co.* v. *Hambly,* 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, *Central R. R. Co.* v. *Keegan,* 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418, *Northern Pac. R. R. Co.* v. *Peterson,* 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, and in *Northern Pac. R. R. Co.* v. *Charless,* 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999, and approved the rule declared in *Railway Co.* v. *Baugh* as the fixed rule of decision.

It is to be noted that the superior servant criterion supposed to be declared the rule of decision in *Chicago, M. & St. P. Ry. Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, is disapproved. The particular circumstances appearing in the *Ross Case* the court said justified the conclusion that the superior servants—the conductors in charge of the trains which met in collision, resulting in injuries to an engineer on one of the trains, with authority to direct their movements—were vice-principals,

and not fellow-servants. In *Goodwell* v. *Montana Central Ry. Co.,* 18 Mont. 293, 45 Pac. 210, this court examined these cases, and adopted the rule as announced in the *Baugh Case,* and it has since been the rule of decision in this jurisdiction. (*Hastings* v. *Montana Union Ry. Co.,* 18 Mont. 493, 46 Pac. 264; *Mulligan* v. *Montana Union Ry. Co.,* 19 Mont. 135, 47 Pac. 795.) Under this rule, Long, being the responsible agent of the company in the carrying forward of the work at Deer Lodge and for the time being in exclusive control, represented the defendant, and was therefore a vice-principal.

In view of the disposition which must be made of this case, the foregoing discussion is not altogether pertinent. We have ventured upon it because the trial court in the fifteenth paragraph of the charge seems to have adopted the superior servant criterion, and counsel for the plaintiff insist that a rule has never been definitely declared in this state.

The liability of the defendant, therefore, depends upon whether the evidence tends to show lapse of duty on the part of Long in failing to furnish a reasonably safe appliance to unload the machinery in the particular alleged in the complaint. The gravamen of the charge is that the appliance was defective, in that no sufficient means were provided to hold the machine in check as it descended the skidway. Under the rule stated above, the master is not bound to select the best appliances, nor the safest nor the best method for their operation. If at the time of its selection the particular appliance is generally used for the same purpose and operated in the same way, it being at the same time reasonably adapted to the purpose in hand, the master has fully discharged his duty. (*Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904.) In *Southern R. Co.* v. *Lewis,* 110 Va. 847, 67 S. E. 357, it was said: "The right of selection among reasonably adequate and safe methods rests with the master. He is not required to furnish the servant with the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of the imple-

ment or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of the business.   Absolute safety is unattainable, and employers are not insurers.   They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business.''   While the servant may assume that the master has performed his duty fully and that he will not be exposed to any hidden danger, yet he assumes the risks which are open and obvious to him when they arise from the nature of the business in which he is engaged; for they are risks which he is hired to assume.   In the case of employees who are known or ought to be known to the master to be inexperienced, the duty of instruction arises, so that the employee may understand and appreciate a given danger, even though one incident to the employment (*Hollingsworth* v. *Davis-Daly Estates C. Co.,* 38 Mont. 143, 99 Pac. 142; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843); but this is only another way of stating the rule of reasonable care not to expose an employee to a danger of which he is not aware.

The appliance employed by the defendant seems to have been comparatively simple.   It appears without contradiction that it was such as is commonly used in unloading heavy articles; in fact, it had in a modified form been used during the unloading of other articles from this car, and it seems was well adapted to accomplish the purpose in hand.   So far as anything to the contrary appears, there were men enough detailed to hold back upon the rope to ease the machine down the skidway, for the uncontradicted testimony is to the effect that the men assigned to that duty could easily have held an object of much greater weight.   The rollers used under the machine to overcome the friction operated smoothly, and served that purpose.   The rope was strong enough to hold the strain to which it was subjected, for, when the plaintiff allowed himself to be caught in the bight, the machine was stopped in its descent, and the rope was cut in order to release him.   The gas-pipe also revolved as it was in-

tended to do, and remained secure in its place.   There was there-
fore no defect in the appliance.   There is some conflict upon the
question whether Long gave the command to hold back on the
rope, and to let the machine go, or whether it was given by
someone else.   At that time the plaintiff was not in contact
with the bight of the rope.   He knew that the purpose was to let
the machine go, and that, when this was done, its weight would
come upon the rope and put the windlass in motion.   He was a
mature man, thirty-one years of age.   After describing how the
appliance was installed, he related the particulars of the accident
as follows: "I was standing back with the machine.   Mr. Long
hollered.   He says: 'One man more can come back and catch
hold of the rope.'   I went back, and, when I got there, I took
hold of the rope; and Mr. Long had his foot on the gas-pipe that
way [illustrating], and he kicked his foot at the rope.   He told
me to get down and shove that rope in the middle of the gas-
pipe, the center of the pipe, so that it would be in a direct line
with the machinery going out of the car.   The end of the rope
was wrapped around the gas-pipe, and the other end was around
the machinery, the planer No. 2 going out of the car, so that
rope extended lengthwise with the car.   *   *   *   When Mr.
Long directed me to put the rope in the center of the gas-pipe,
as I have testified to, I got down there and started to push it to
the center, and I did that.   I was working at it at the time
he hollered for them to shove the machinery off, and it was Mr.
Long who hollered that.   As regards my exact position at that
time, well, I was stooped over, pulling the rope.   I stooped over
like this, one knee kind of like this [illustrating], and I was
pushing the rope over in the center of the gas-pipe; and he told
me to hold this rope so that one strand would not rub on top
of the other.   I was looking down at the gas-pipe and the rope.
I do not know how far from the gas-pipe it was that I had hold
of the rope, probably a foot or eighteen inches.   I could not
say just exactly.   At the time Mr. Long directed me to put the
rope in the center of the gas-pipe he was standing just behind
the gas-pipe.   I do not know how far he was from me, possibly

about two feet.  As regards where he was standing when he gave the direction to let the machinery go, well, I was looking at the gas-pipe, and I could not say just exactly where he was standing, but he was standing some place behind me, inside of the car, if he had not jumped out.  There is where he was when he put me down.  \* \* \*  Well, Mr. Long, after he called me to get back there, then he hollered in front: 'Boys, all right; shove her off,' and he hollered for us to hang back on the rope; and I started to rise to my feet and hang back on the rope, and they had shoved the machinery off as I started to rise, and caught my fingers there and jerked me down under this gas-pipe, and it wound my arm around the gas-pipe to my shoulder.  \* \* \* The time when I took hold of the gas-pipe was when Mr. Long told me—I did not take hold of the gas-pipe.  I took hold of the rope.  The time when I took hold of the rope at the gas-pipe was when Mr. Long told me to.  He told me to straighten out the rope on the gas-pipe.  Then he hollered, 'Boys, all right; shove her off.'  Just before I took hold of the rope, it was still.  It had not yet moved.  It was still when I took hold of it, and they had not at that time started the planer down the skidway. \* \* \*  As regards the words that Long told me or said to me when I got down to take hold of this rope, well, Mr. Long told me to get down and put this rope on the middle, the center of the gas-pipe, and so that the rope, one strand would not roll on top of the other, and keep it in the direct line of the machine, and that was just at the instant they started to move it, pinch the planer off, when the rope started to move.  At that time my hands were possibly about twelve or eighteen inches from the bight of the snub, when I started to rise up.  I did not (?) know that, if my fingers got into the bight of the snub, they would be hurt.  I certainly did realize the fact that the snub would hurt my fingers if they got caught in it.  \* \* \*  As regards the purpose of this rope around the planer, and the snub, the idea of using it at all, well, I suppose it was to check the machinery, to let it go down slow.  When it would go down the incline, it would run fast.  I knew that at that time.  And

42 Mont.—36

at the moment it went over onto the skidway the rope would have to tighten quick on these rollers.    I knew that at the time I was there on the car helping.    I say I was kneeling down behind the gas-pipe at the snub.    I stooped over.    I was looking down at the gas-pipe and the rope.''

This account not being substantially contradicted by any witness, taken at its full value, tends to show, not that Long was negligent in failing to provide a reasonably safe appliance, but that, if he was guilty of negligence in any respect, it consisted in ordering the machine to be started without allowing plaintiff time to get out of reach of danger.    Even so, the plaintiff's hands were free from the bight of the rope at that time, and he could have saved himself by simply letting go when the order was given.    He knew that the rope would be drawn tight as soon as the weight came upon it, and that it would at once begin to move.    The court instructed the jury that, in order to hold defendant liable, they must find two facts: (1) ''That the appliance or apparatus used was in fact not a reasonably safe and suitable appliance for the lowering of said planer; (2) that the defendant or the witness Long knew, or acting as an ordinarily prudent person would act under the circumstances ought to have known, that the said apparatus or appliance was not reasonably safe and sufficient for the purpose of lowering said planer.''
We quote this portion of the charge in connection with the testimony set forth above to show clearly the theory which both the court and counsel for plaintiff entertained of the issue presented by the pleadings; and, in the light of the testimony, it is made apparent that, whatever may have been the proximate cause of plaintiff's hurt, it was not brought about by any defect in the appliance with which he and his associates were at work. The order of Long may have been premature, but this is not alleged as negligence, and is not within the issues; so that there is such a divergence between the issues tendered by the complaint and the evidence that it cannot be said that plaintiff has proved in substance the cause of action alleged.    Hence the conclusion is inevitable that the verdict is not justified by the evi-

dence.   (*Forsell* v. *Pittsburgh & Mont. Co.*, 38 Mont. 403, 100
Pac. 218; *Flaherty* v. *Butte Electric Ry. Co.*, 40 Mont. 454, 135
Am. St. Rep. 630, 107 Pac. 416; *Bracey* v. *Northwestern Improve-
ment Co.*, 41 Mont. 338, 109 Pac. 706.)

The plaintiff had full opportunity to introduce all of his evi-
dence in support of the cause of action alleged, but failed to
make a cause to go to the jury.   The evidence introduced by
the defendant did not strengthen or supplement his proof in
any way.   Under these circumstances, the court will not direct
a new trial, but make such an order as will finally dispose of
the case.   (*State ex rel. La France Copper Co.* v. *District Court,*
40 Mont. 206, 105 Pac. 721.)

The judgment and order are reversed, with direction to the
district court to enter judgment for the defendant.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.