MARJORIE A. BAUMGARTNER, Plaintiff and Respondent, *v.* The NATIONAL CASH REGISTER COMPANY, Defendant and Appellant.

No. 10881.
Submitted September 17, 1965. Decided October 19, 1965.
406 P.2d 686.

Lyman H. Bennett, Jr. (argued), Bozeman, for appellant.

Wade J. Dahood (argued), Anaconda, H. A. Bolinger, Jr. (argued), Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in the amount of $55,000 entered upon a jury verdict.

Plaintiff was severely injured on March 16, 1962, while working as a clerk at a check-out stand in a Safeway Store in Bozeman. The cause of the injury was an electric shock received while operating a cash register. The complaint alleged that the electric shock was the result of negligence on the part of the defendant in installing and maintaining the cash register.

The answer consisted of denials, and affirmatively plead negligence of the plaintiff and also assumption of risk.

Pre-trial proceedings were had, and the parties agreed that while employed by Safeway, plaintiff received a severe electrical shock from touching and being in contact with a cash register, and on that date a maintenance agreement for the maintenance and repair of the cash register between defendant National Cash Register Co. and Safeway Stores, Inc., was in full force and effect.

Plaintiff's contentions were that the cash register was under the exclusive care and maintenance of the defendant, and that the defendant's negligence in maintaining the cash register caused the injury.

Defendant contended that it was not negligent, and in any event it was plaintiff's own negligence which caused her injury and further that she had assumed the risk.

Safeway Stores, Inc., purchased cash registers from defendant National Cash Register Company. Then, by written contracts, National Cash Register Company agreed to furnish mechanical services for and to keep the cash registers in good operating condition in the Safeway store in Bozeman, and in connection therewith, agreed to furnish semi-annual inspections and to furnish emergency service necessary between inspec-

tions at no additional cost except traveling expenses. The written agreements provide in pertinent part:

"The equipment is to be repaired and adjusted only by authorized representatives of the company (the defendant is referred to as the company).

"The company agrees to furnish complete mechanical service and keep the equipment listed thereon in good operating condition.

"Emergency service necessary between inspections will be furnished at no additional cost to the user during our regular business hours.

"All replacement parts required to insure proper operation of the equipment will be furnished at no additional cost."

While the evidence is somewhat conflicting, the general picture is as follows: In 1960 the Safeway store was remodeled. In the remodeling, three-pronged outlets were provided for connecting the cash registers. The third prong is a grounding wire or device to provide safety against electrical shorts in the machines. Under the repair and service contracts, National Cash Register checked the grounds. The machine in question at least had a two prong plug with a third grounding wire attachment, although some of plaintiff's witnesses stated it had had a three-prong plug with the third prong clipped off. But accepting defendant's version, a two-prong plug with a grounding wire attachment was present. Defendant's servicemen testified they frequently had trouble with the ground wires in Safeway Stores as wastebaskets would bump them and knock them loose.

At any rate, following the accident the manager of the Bozeman Safeway Store called an electrician, not a repairman of defendant. The electrician tested the machine and found 120 volts going through it and found the ground wire had been cut off "slick and clean." The electrician then put new three-pronged caps or adapter plugs on all of the other machines as safety devices. The testimony is that a three-prong plug could

not be accidentally knocked about to disconnect the ground without disconnecting the power, too.

The faulty machine was put aside and subsequently taken by defendant who could not find anything wrong with it according to one of their repairmen. Some testimony was elicited that just a change of polarity, that is a switching of plug-end poles, would allow an electric shock *if* the machine was not grounded. The three-pronged plugs could not physically be changed as to polarity. So, even this theory proves a faulty machine. Two other repairmen checked it but were not called as witnesses. The fact was that the faulty machine clearly did cause the shock, clearly was not grounded, and *must have* been faulty and the jury was entitled to so believe. What was faulty with the machine itself was not and could not be proven, but, the safety device, the grounding procedure was shown to be faulty, and, further, the defendant knew of the danger, had found on numerous occasions that the grounds of the type used were not in working order. Safeway had provided the type of receptacle for a safe grounding system but defendant had not modified their connection according to their testimony. Their repairmen did, however check out and make sure all of the plugs were grounded.

The particular faulty register, and we call it that because the evidence clearly shows it to have caused the shock, had a history of producing mild shocks according to Safeway employees. Again the evidence is contradictory. Plaintiff's witnesses testified that defendant was informed of this and did check the machine about a month prior to the accident. Defendant's witnesses denied this, but even though maintenance and repair records between regular inspections were ordered produced, none were produced, and further, even though three repairmen worked in the Bozeman area and received calls for their work, only one, Jakshaw, was called as a witness. The defendant's manager admitted that there were what he termed R-11 reports (repair reports) from Safeway Store in Bozeman, eight in number during a period of January 1962 and October

1962; there was testimony that there were likely more. They were never produced, and, further the then manager of Safeway Store testified that upon his call for repair prior to the accident, the serviceman reported there was nothing wrong.

The case was submitted to the jury and a verdict returned in favor of the plaintiff. A motion for judgment notwithstanding the verdict was made and denied. This appeal followed.

The specifications of error are seventeen in number, but are argued and briefed in groupings which we shall follow.

The first alleged error is that the trial court erred in sustaining an objection to defendant's offer of proof to prove that it was the standing policy of defendant to service all cash registers every three months, rather than every six months, but by reason of demands of Safeway, it had varied that policy to six months. In addition, the defendant argues that no objection was made and that the judge voluntarily ruled. As to this latter contention, the record simply does not bear it out. Objection was made and sustained, the jury removed, the question and objection re-read and then the offer of proof. The record shows "argument was heard on the motion." Then the objection was sustained. Clearly, the court considered the objection. As to the main contention that it was error to exclude the offer of proof, no authority is cited. Further, the very written agreements for service and maintenance previously partially quoted could not without further showing be varied by parol evidence. The defendant had agreed at pre-trial that it was responsible for maintenance under the written agreement. The written agreement restricted anyone else from such responsibility. There is no merit to this specification.

The next error urged is the denial of defendant's motion for a directed verdict. The grounds for the directed verdict were no evidence of negligent failure to repair the machine or any act negligent in character. What we have heretofore set out as the facts produced indicate a sufficient showing,

if believed by the jury, to find negligent repair or failure to repair. But, the appellant defendant argues that the written contracts of service between defendant and Safeway, referred to as Exhibit F and Exhibit 7 prohibited defendant from going to Safeway store more often than once during a five to seven month period. We shall not attempt to detail the two exhibits, but briefly plaintiff's Exhibit 7 is the maintenance agreement admitted in the pre-trial order as the working agreement in effect. Defendant's Exhibit F is dated in 1950 whereas plaintiff's Exhibit 7 is dated in 1960 and places the entire responsibility for maintenance and repair on defendant. Defendant's Exhibit F is modified by Exhibit 7. We simply cannot follow defendant's argument on this point because clearly by written contract defendant had exclusive responsibility for maintenance and repair and acted so throughout. While the evidence may be conflicting in certain particulars, the evidence, if believed, established the duty of defendant to effectively ground the cash register; also, the failure of that duty without which the accident could not have happened. The cash register itself when tested was charged with electricity, and the electrical shock caused the injury.

The next error urged carries the defendant's argument along the same vein as before. It is as to Instruction No. 8 which is as follows:

"You are instructed that in making inspections and repairs of equipment on the premises of an owner thereof, under an agreement to do so, the defendant must use care equal to the duty it has assumed, and failure to use such care renders the defendant liable for ensuing injury and damage."

Defendant argues that all the evidence was that the defendant had properly performed its inspection and maintenance of the equipment and thus this was a comment on the evidence. Again, as indicated in our fact summary, the evidence, if believed, was that the defendant may not have properly performed.

Instructions Nos. 9, 10, and 11 are also urged as error along the same line as being comments on the evidence, the defendant insisting that the evidence was lacking or misconstrued. We shall not quote the instructions nor discuss them further since our review of the facts is contrary to what the defendant urges the evidence to have shown.

Instructions Nos. 12 and 13 are urged as error. In these two instructions the court instructed that the law requires grounding of electrical apparatus where necessary, and that failure to so ground, if a preponderance of the evidence so showed and the failure was a proximate cause of the accident, constituted negligence per se. Again, the defendant argues that the evidence did not show a duty on defendant to ground the machine. This is not so as we've indicated before. R.C.M.1947, § 24-131, provides for grounding. The contract provided for inspection and maintenance. The defendant recognized its duty and knew of the existence of the problem. That such violation of a statutory duty constitutes negligence per se is clear. (See Faucette v. Christensen, 145 Mont. 28, 400 P.2d 883.

Next, appellant challenges the instructions given relative to the doctrine of *res ipsa loquitur*. The challenge is made on the basis that there was no showing of control of the machine by defendant. Additionally, in this challenge of error as well as what we have discussed in the second urged error on the motion for directed verdict, the defendant urges that this is not a proper case for *res ipsa loquitur* because there was a lack of circumstances to show negligence.

There is, as we have indicated before, no question but that the effective grounding of the cash register was within the defendant's sole province. The defendant's own contract prohibited others from repairing, adjusting or maintaining the cash register. Prior to the accident, no one except the defendant had anything to do with repairing, adjusting or maintaining the machines. The testimony is clear that if the ma-

chine had been properly grounded the accident could not have happened.

Under these circumstances a proper case of *res ipsa loquitur* does exist. Now then as to control, we discussed this in Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979, as follows:

"'* * * The requirement of 'exclusive control * * * at the time of the injury' does not mean actual physical control. A brief glance at some of the situations where *res ipsa* has been applied show this to be true. The case of a bottle exploding or the starting up of a parked automobile are examples where the doctrine of *res ipsa loquitur* has been applied even though the mishap occurs at a time and place remote from the defendant's actual physical control (Zentz v. Coca Cola Bottling Co., 39 Cal.2d 436, 247 P.2d 344; Lewis v. Wolk, 312 Ky. 536, 228 S.W.2d 432, 16 A.L.R.2d 974). Thus, the requirement of control as applied does not mean actual physical control at the time of injury. It may be sufficient to show that the defendant exercised control some time prior to the injury.

"Prosser has suggested that this requirement be disposed of in *res ipsa* cases. He states:

"'* * * It would be far better, and much confusion would be avoided, if the idea of "control" were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it.' (Prosser, Law of Torts, 3rd Ed., p. 225.)

"This does not mean that the possibility of other causes be eliminated altogether, but only that it be shown that the greater probability lies at defendant's door. (Harper & James, The Law of Torts, § 19.7, p. 1086)."

The appellant cites Whitney v. Northwest Greyhound Lines, 125 Mont. 528, 242 P.2d 257; Davis v. Trobough, 139 Mont. 322, 363 P.2d 727, and Stocking v. Johnson Flying Service, 143 Mont. 61, 387 P.2d 312, for the rule on exclusive control. In the previous partial quotation from Krohmer v. Dahl, supra, we

attempted to explain the meaning of "exclusive control." That defendant had the right of control by contract is clear; that defendant exercised that right is equally clear. The facts that defendant did the *only* maintenance and checking of the grounding of the machines, knew of the problem in Safeway Stores, and did nothing to prevent its occurrence, give rise to that greater probability that the only cause of the accident was the failure to properly ground the machine.

In its reply brief, appellant cites Bostwick v. Butte Motor Company, 145 Mont. 570, 403 P.2d 614, decided by this court subsequent to the Krohmer v. Dahl case. In the Bostwick case we held that no exclusive control was shown nor any lack of fault by the injured person. We find the facts of this case completely different. Plaintiff here, was without fault as we have indicated in our fact statement. And, different completely from the Bostwick case, the exclusive control was shown. The case simply has no application on this point.

We have not specifically discussed certain other arguments of appellant going to instructions having to do with its defenses of contributory negligence and assumption of risk by the plaintiff. However, the court did instruct on these matters, and the jury could, as it did, find from the evidence that there simply was no contributory negligence or assumption of risk by plaintiff. We shall not discuss them further.

Failing to find any reversible error, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR concur.