IRVING POLLARD, Plaintiff and Respondent, *v.* DONALD
TODD AND DONALD TODD, JR. Co-partners, Defen-
dants and Appellants.

No. 11095.
Submitted September 15, 1966. Decided October 10, 1966.
418 P.2d 869.

172

174

Berg, O'Connell & Angel, Charles F. Angel (argued), Bozeman, for appellants.

Blenkner & Blenkner, E. A. Blenkner (argued), Columbus, J. H. McAlear (argued), Red Lodge, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This appeal arose from a suit by Irving Pollard against his employers, Donald Todd and Donald Todd, Jr., for personal injuries alleged to have resulted from a fall from a scaffold. The jury returned a verdict for the plaintiff in the amount of $25,563.45 and the judgment was entered accordingly. From this judgment, both defendants appeal

The appellants, hereinafter called the defendants, are father and son engaged in the farming and stockraising business as co-partners. Defendants approached one Meredith Hillman, hereinafter called Hillman, on the matter of bidding on a con-

tract to construct a grain storage building on defendants' premises. Hillman declined to enter into a contract because he was not familiar with the type of building required by the defendants and was unsure of what would be involved. Subsequently defendants hired Hillman as a carpenter at the rate of $3.00 per hour and gave him supervisory duties. Sometime later the respondent, hereinafter called the plaintiff, was hired as a carpenter's helper and received orders from both defendants and Hillman. On the day of the injury the plaintiff was informed by Hillman that two foot strips of tin would have to be nailed around a door of the building under construction At the direction of Hillman a ladder was placed on either side of the door at a distance of about fifteen feet apart. Both ladders were fitted with metal hooks called "ladder jacks" which are devices commonly used in the building trade to support a plank and thereby create a platform for workmen. Hillman then selected a wooden plank from a pile of planks which had previously been used to construct scaffolding and directed the plaintiff to assist him The plaintiff did assist by positioning one end of the plank onto one of the "ladder jacks" while Hillman positioned the other end. All of the planks in the pile were unplaned, "rough" lumber of approximately the same dimensions. The plank selected by Hillman was 18 to 20 feet long and contained several knots. Plaintiff and another workman mounted this scaffold arrangement and proceeded to nail on the strips of tin. The plank broke near the center without any warning whatever causing the plaintiff to fall twelve feet to the ground.

Evidence was introduced at the trial to the effect that Hillman had discussed the scaffolding needs of the construction project with both of the defendants. Hillman had suggested that commercially manufactured scaffolding be rented, while the defendant, Donald Todd, Jr., had suggested using a tractor mounted hydraulic lift. However, it was clear from all of the testimony, that this discussion was directed at the future needs

o.f the construction project when the work had progressed to heights above the level from which the plaintiff fell. There was no evidence that the defendants were in any way dissatisfied with the use of ladder jacks as they were being used when the plaintiff fell.

Both the plaintiff and defendants proceeded at the trial on the theory that the plaintiff was injured in the course of his employment with the defendants' farming and stockraising business, and was therefore exempt from the operation of the Workmen's Compensation Act. Plaintiff did not claim under the Workmen's Compensation Act and the defendants asserted their right to interpose the common-law defenses of contributory negligence, assumption of the risk, and negligence of a fellow servant.

Defendants contend that the trial court erred by giving an an instruction on the doctrine of res ipsa loquitur for two reasons: (1) that the facts and circumstances of the case are inappropriate to the application of the doctrine, and: (2) the use of words ''utmost care and diligence'' was prejudicial. The first part of this contention will be considered first and the second will follow later in this opinion.

The appropriateness of the instruction is attacked on the grounds that the plaintiff is not without fault and that the defendants were not in exclusive control of the instrumentality which caused the injury. To the first it is sufficient to say that a defendant cannot prevent the plaintiff from having an instruction on the doctrine of res ipsa loquitur merely by interposing the defense of contributory negligence. If evidence is introduced inferring negligence on the part of the plaintiff, the plaintiff has the burden of introducing further evidence which negates that inference. At this point the issue is one of general proofs for the jury to decide under proper instructions. See Prosser on Torts, 2d ed., pp. 208-9 (1955); 2 Harper and James on Torts, p 1093, § 19.8 (1956). The record shows that the only act of the plaintiff with respect to the faulty scaffold

was to place one end of the plank on one of the "ladder jacks" under the supervision of Hillman. We find no inference of negligence from this fact.

Defendants' contention that res ipsa loquitur was inappropriate to this case because the defendants were not in exclusive control of the instrumentality which caused the injury is also unconvincing. While defendants' brief correctly cites this court as requiring the element of exclusive control in Whitney v. Northwest Greyhound, 125 Mont. 528, 533, 242 P.2d 257, 259, it fails to take into account that "exclusive control" does not mean actual physical control at the time of the accident. Krohmer v. Dahl, 145 Mont. 491, 498, 402 P.2d 979, 983; Baumgartner v. National Cash Register Co., 146 Mont. 346, 353, 406 P.2d 686, 690. The jury could have found that defendants had expressly approved the use of "ladder jacks" and plank which injured the plaintiff and this would have been sufficient "control" to invoke the doctrine of res ipsa loquitur. However, it is not necessary to reach the question of degree of control since we hold that the defendants had actual physical control through their supervisor Hillman.

This court has consistently held that the master has a duty to use reasonable care to provide a reasonably safe place for his servants to work and to provide reasonably safe tools and appliances with which to perform the tasks assigned. Allen v. Smeding, 138 Mont. 367, 377, 357 P.2d 13, 18, 19. This is a duty the master may not delegate to another. Gregory v. Chicago, Milwaukee & St. Paul R. R., 42 Mont. 551, 556, 113 P. 1123, 1125; Morelli v. Twohy Bros. Co., 54 Mont. 366, 375, 170 P. 757, 758; Grant v. Nihill, 64 Mont. 420, 440, 441, 210 P. 914, 920. Therefore, Hillman, acting as supervisor for the defendants, became their vice-principal or alter ego when he selected the defective plank and supervised the construction of the scaffold.

The defendants' objection to the application of the doctrine to this case is not novel. A large number of cases have been

litigated over the precise issue of whether a servant should be allowed to rely on the doctrine of res ipsa loquitur when suing his master for injuries sustained by falling from a scaffold in the course of his employment. A substantial majority of these cases have approved the application of the doctrine to this factual situation. See annotation in 22 A.LR.2d 1176 for a discussion of these cases.

The instruction on res ipsa loquitur which was objected to by the defendants was given as instruction 7 and reads as follows:

"From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendants in failing to furnish the plaintiff with a safe place in which to work. That inference itself is a form of evidence and if none otherwise exists tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict to the plaintiff. It is incumbent on the defendants to rebut the inference by showing that they did, in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure of duty on their part."

Although we have concluded that this is a proper case for an instruction on res ipsa loquitur we cannot say that the above-quoted instruction is a desirable expression of the doctrine. As a matter of policy it is better to give a conditional instruction and allow the jury to apply the doctrine if the requisite facts are found rather than to give a positive instruction which applies the doctrine as a matter of law Maki v. Murray Hospital, 91 Mont. 251, 263, 7 P.2d 228, 231. The remainder of this opinion will develop our conclusion that any error that may have been introduced because of the form of this instruction was harmless.

While settling instructions, plaintiff offered his proposed instruction 15A which was properly refused by the court on

defendants' objection that the instruction created a non-rebutt-able presumption of the defendants' negligence. The court then incorporated a portion of the refused instruction 15A into the court's instruction 2, which in material part reads as follows:

"Insofar as scaffolds are concerned the laws of this state provide that all scaffolds erected in this state for the use in the erection, repair, alteration or removal of buildings shall be well and safely supported, and sufficient width, and properly secured, so as to insure the safety of persons working thereon and passing thereunder, or by the same, and prevent the falling thereof, or of any material that may be used, placed or deposited thereon."

This is a restatement of R.C.M.1947, § 69-1401, and while entirely accurate, the plaintiff was entitled to a much stronger instruction.

Chapter 14 of Title 69, R.C.M.1947, is commonly referred to as the "Scaffold Act". It is one of several similar laws passed by some of our sister states just after the turn of the century and prior to general enactments of Workmen's Compensation legislation. For examples of other "Scaffold Acts" see: Illinois Revised Statutes 1965, Chapter 48, §§ 60-69; Oregon Revised Statutes, § 654.310(2); Revised Statutes of Nebraska, § 48-425; Missouri Revised Statutes 1959, § 292.090, V.A.M.S. See also Gannon v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co., 22 Ill.2d 305, 175 N.E. 2d 785, for a good history of the development of scaffolding acts A proper construction of our "Scaffolding Act" and particularly section 69-1401 is determinative of all of the issues in this case

We hold that the purpose of section 69-1401 is to supplement the protection of the common law by providing criminal sanctions and imposing an absolute statutory duty upon the owners of real estate to protect workmen and others from the extraordinary hazards associated with scaffolds. The mandatory nature of the statute forecloses the common-law

defenses of assumption of the risk, contributory negligence, and negligence of a fellow servant. We have not decided that liability becomes fixed upon the showing of a scaffold-associated injury. A defendant may escape liability upon proof that there was no violation of statute or that the violation was not the proximate cause of the injury. While we recognize that there has been confusion over the effect of the ''Scaffold Act'' on common-law defenses and over the meaning of certain words in the various acts, there is general support for our construction of this act. Continental Can Co. v. Horton, 250 F.2d 637, 642 (C.C.A. 8th Cir.); Johnson v. Weberg, 142 Neb. 516, 7 N.W.2d 65; Fetterman v. Production Steel Co., 4 Ill.App.2d 403, 124 N.E.2d 637; Hall v. Paul Bunyan Lumber Co., 177 C.A.2d 761, 2 Cal.Rptr. 519.

Plaintiff was entitled to an instruction that section 69-1401 imposed an absolute duty upon the defendants and that a breach of that statutory duty was negligence per se. Conway v. Monidah Trust, 47 Mont. 269, 132 P. 26; Lesage v. Largey Lumber Co., 99 Mont. 372, 43 P.2d 896. Of course, whether this negligence was the proximate cause of the injury remains a question for the jury. (See discussion in Faucette v. Christensen, 145 Mont. 28, 400 P.2d 883.)

It follows from the construction we have placed on section 69-1401, that there was no error on the part of the court by refusing defendants' instruction on assumption of the risk. The court, in fact, gave the defendants more than they were entitled to by granting them an instruction on contributory negligence over plaintiff's objection that section 69-1401 had removed that defense.

We find no merit in the contention of defendants that section 69-1401 was not intended to apply to workmen. The statute is too broad and inclusive to permit that construction.

Defendants assign error because of the use of the words ''utmost care'' in the instruction given on res ipsa loquitur. (quoted supra). The point is well-taken that the

usual standard of care imposed upon a master with respect to his servants is that of "ordinary care". But as we have construed section 69-1401, the master's standard of care has been altered by statute so that the defendants here were not only required to exercise the "utmost care" but were subject to the absolute liability imposed by the statute so long as the statute was violated and the violation was the proximate cause of the injury.

Finding no reversible error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and HONORABLE NAT ALLEN, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.