The STATE OF MONTANA on the Relation of the GREAT FALLS NATIONAL BANK, a National Banking Corporation, Relator, *v.* The DISTRICT COURT of the EIGHTH JUDICIAL DISTRICT of the STATE OF MONTANA, in and for the COUNTY OF CASCADE, and the HONORABLE PAUL G. HATFIELD, District Judge, Respondents.

No. 11762.
Submitted October 27, 1969.
Decided December 30, 1969.
463 P.2d 326.

Alexander, Kuenning & Hall, Paul Miller argued, and Edward C. Alexander appeared, Great Falls, for relator.

Hoyt & Bottomly, Richard Bottomly argued, Great Falls, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Original application for supervisory control by a building owner, The Great Falls National Bank, named as defendant in a Scaffold Act case. Relator was sued in the district court by a workman injured in a fall from a scaffold during exterior renavation of relator's bank building. The district court ordered two of relator's defenses stricken from its answer. Subsequently the district court ordered summary judgment on the issue of liability in favor of the injured workman, leaving only the amount of damages to be determined by the jury at the trial. Relator seeks to have both orders set aside.

The factual background of this case is clear from the exhaustive discovery procedures utilized by the parties. Relator owns a 5-story building in downtown Great Falls on which it began a renovation program in 1966. Relator contracted with several different contractors to perform several phases of the work, one of which was Premier Waterproofing Company covering the cleaning and waterproofing of the exterior of the building.

One of Premier's employees on this job was Richard L. Kible, plaintiff in the district court, who arrived on the job three days after it started. Kible had two co-workers, Valzar Pena and Roy S. Cook. There is some difference in the descriptions and characterizations of Kible's job status among the various parties and witnesses, but it is undisputed that he was an employee of Premier and had supervisory duties in addition to performing the manual labor involved in the renovation. All three employees of Premier were experienced workmen.

Premier's own scaffolds were used to accomplish the exterior renovation. These consisted of a deck or platform on which the workmen stood. Metal stirrups encircled the platform and attached to rope falls consisting of a block and tackle used to raise and lower the deck. The block and tackle was attached by a hook to hangers consisting of a circular cable loop or collar secured together by cable clamps. The hangers slid over the end of the lookouts and were affixed to one side thereof by six penny nails. These lookouts extended a foot or so over the top edge of the building so that the hanger permitted the fall lines to hold the swinging scaffold away from the building by use of the stirrups attached to the scaffold deck.

The lookouts were moved from place to place on the roof of the bank building as the work progressed. The lookouts were not only movable, but were capable of being reversed. At about 10:00 a.m. on November 26, 1966, one lookout had in fact become reversed so that the circular cable hung supported only by six penny nails instead of being supported by the lookout and the weight of the platform. At this time Kible stepped onto

the scaffold, the six penny nails pulled loose, and Kible and Cook fell to the sidewalk 60 feet below. At the same time the scaffold deck became disengaged from the rest of the assembly and fell on the injured workmen lying on the sidewalk.

In February 1968, Kible filed an action for damages for his personal injuries in the district court of Cascade county, naming relator as the sole defendant. Kible's suit charged relator as owner of the building with violation of the Montana Scaffold Act, specifically section 69-1401, R.C.M.1947. Relator answered, setting up the following defenses: (1) failure to state a claim on which relief can be granted; (2) general denial of liability; (3) the sole negligence involved was that of plaintiff as superintendent and alter ego of his employer who had sole exclusive control of the scaffold; and (4) the sole proximate cause of plaintiff's injuries were his own acts and omissions.

Plaintiff Kible moved to strike the last two defenses. After hearing and argument, the district court ordered them stricken on August 22, 1968. Thereafter on March 31, 1969, plaintiff Kible moved for summary judgment on the question of negligence and proximate cause. This motion was heard, argued, and granted by district court order dated April 30, 1969, reading in material part as follows:

"IT IS ORDERED, ADJUDGED and DECREED that the plaintiff's motion for summary judgment is granted. Section 69-1401 imposes upon the owner absolute liability to insure that all scaffolds shall be well and safely supported and properly secured so as to insure the safety of persons using them and to prevent the falling thereof. The Court finds there is no genuine issue of fact for jury determination insofar as a violation of the statute in question and that such violation was a proximate cause of the plaintiff's injury. Therefore, the only question of fact that shall be presented to the jury is the question of what damage, if any, was suffered by the plaintiff as a result of violation of the scaffold act."

Relator now seeks a writ of supervisory control from this Court to the end that the district court's orders of August 22, 1968 and April 30, 1969 be vacated and set aside.

Three underlying issues are presented: (1) Is supervisory control a permissible remedy? (2) Is plaintiff barred from relief under the Scaffold Act where his sole negligence is the sole proximate cause of his injuries? (3) Is a landowner not in direct supervision and control of the work liable for a violation of the Scaffold Act?

The first issue involves procedural matters only. Relator here seeks supervisory control to review two orders of the district court: (1) the order striking two defenses from its answer, viz. plaintiff's own acts and omissions were the sole proximate cause of the accident, and (2) the order granting plaintiff summary judgment on the issue of liability. These orders are not directly appealable, neither being denominated an appealable order in Rule 1, M.R.App.Civ.P., presumably because each is interlocutory in character and reviewable on appeal from final judgment.

But an appeal from a final judgment here would impose undue hardship on relator and be wholly inadequate as a remedy. Relator would be forced to go to trial with its liability already established and no longer an issue when in fact its besic defense is that it is not liable at all. Supervisory control has heretofore been granted by this Court to prevent needless litigation, the rationale being that under such circumstances the remedy by appeal is not adequate. State ex rel. Eacker v. District Court, 154, Montana 36, 459 P.2d 686, 26 St.Rep. 604; State ex rel. Buttrey Foods, Inc. v. District Court, 148 Montana 350, 420 P.2d 845; State ex rel. Ryder v. District Court, 148 Montana 56, 417 P.2d 89; State ex rel. Stand. Life & Acc. Ins. Co. v. District Court, 149 Montana 107, 423 P.2d 291. Accordingly we hold that supervisory control is an available remedy in the instant case.

Proceeding to the second underlying issue, relator contends that plaintiff is barred from relief because his own negligence was the sole proximate cause of his injury and damages. Relator argues that any violation of the Scaffold Act for which it could be held liable was committed by the plaintiff himself. Thus, relator claims, plaintiff was in pari delicto with it and, having himself violated a penal statute, cannot now recover for his injuries resulting from such violation.

This issue, at this stage of the proceeding, need not be answered since it is contained within the first two defenses raised in the answer and no motion for summary judgment has been made by the defendant. In our handling of the third issue hereafter, further proceedings in the district court are indicated and this second issue may or may not be involved in any attempted amendment of pleadings. Accordingly, we find it unnecessary to rule on this issue at this time.

The third issue set forth above is the principal issue in this case. It has not heretofore been presented to this Court for ruling although there is dictum in Pollard v. Todd, 148 Montana 171, 418 P.2d 869 and in Joki v. McBride, 150 Montana 378, 436 P.2d 78, suggesting an answer. The issue, simply stated, is this: Is a landowner not in direct supervision and control of the work liable in damages for violation of the Scaffold Act by an employee of an independent contractor?

The injured employee contends that the Scaffold Act is a safety statute designed to protect a specific class of persons, viz. those who must work on and around scaffolds, and therefore in the light of such purpose imposes a different duty than that existing at common law. Specifically, according to the injured workman, an absolute nondelegable duty is imposed on the landowner for the dual purpose of (1) preventing scaffold accidents from occurring, and (2) providing remdeies for scaffold workers who are injured in accidents. Accordingly, the injured employee argues, absolute liability is fixed upon the landowner irrespective of fault or negligence on his part, on the part

of the independent contractor, or on the part of the injured employee or his fellow workmen, because of the extrahazardous nature of the work. For this reason, the injured employee claims, the landowner cannot insulate himself against liability by having the work done by an independent contractor.

On the other hand, relator contends that the landowner here, lacking the necessary expertise itself, contracted with an expert to do the work and should not be held liable for any mistakes of such independent contractor. Relator points out that this is the only means it has of protecting itself and it would be unjust and inequitable to hold it liable under such circumstances. Finally, relator argues, a fair reading of the Scaffold Act indicates that the legislature intended to impose liability only on persons in control of the work and not upon landowners per se, contrary dictum in *Pollard,* supra, and *Joki,* supra, notwithstanding.

At the outset we note that plaintiff's claim against relator is grounded on negligence per se resulting from violation of a safety statute (the Scaffold Act) enacted for the protection of a class (scaffold workmen and others) of which plaintiff is a member. This basis of liability has long been recognized in Montana. Williams v. Maley, 150 Mont. 261, 434 P.2d 398; Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1; Daly v. Swift & Co., 90 Mont. 52, 300 P. 265. Thus we must recognize initially that liability, if any, in the instant case is still based upon and controlled by negligence principles; describing liability here as vicarious liability, liability without fault, strict liability and similar inexact terms does not change these negligence principles one bit, but on the contrary results in nothing but confusion.

We now direct our attention to the Scaffold Act itself. Montana's Scaffold Act was enacted by the 1909 legislature, appearing initially as Chapter 107 of the 1909 Session Laws and later codified as sections 69-1401 to 69-1405 inclusive, R.C.M. 1947. The basic duty owing to scaffold workers and others is

clear from the plain language of the Act which provides in material part:

"All scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings shall be well and safely supported, and sufficient width, and properly secured, so as to insure the safety of persons working thereon or passing thereunder, or by the same, and to prevent the falling thereof, or of any material that may be used, placed, or deposited thereon." Section 69-1401, R.C.M.1947.

The purpose of this statute has previously been held by this Court to be for the protection of workmen and others from the extraordinary hazards associated with scaffolds (Pollard v. Todd, supra), which holding was later quoted with approval by this Court in Joki v. McBride, supra.

Breach of this basic duty is established by proving a violation of the Scaffold Act. Such breach constitutes negligence per se. If such negligence per se proximately causes injury to the workman, he is entitled to recover. Pollard v. Todd, supra.

But against whom is the injured workman entitled to recover? Or stated another way, who owes the basic duty imposed by the Scaffold Act? We must look to the Scaffold Act itself to determine the answer to this question. Section 69-1402, R.C.M.1947, imposes a duty on *every owner, person, or corporation who shall have the direct and immediate supervision or control of the construction or remodeling of any building having more than three framed floors"* to provide a temporary planked floor "which shall be laid to form a good substantial temporary floor for the protection of employees and all persons engaged above or below, or on such temporary floor in such building." (Emphasis supplied.)

Section 69-1404, R.C.M.1947, provides that *"It shall be the duty of all owners, contractors, builders, or persons having the direct and immediate control or supervision of any buildings"* under construction to protect stairways, elevator openings,

344

flues, and all other openings in the floors. (Emphasis supplied.)

Section 69-1405, R.C.M.1947, provides that *"Any person violating any of the provisions"* of the Act shall be fined and places a duty in the building inspector, through the county attorney, *"in case of failure of such owner, person, or corporation to comply with this act promptly"* to take the necessary steps to enforce the Act. (Emphasis supplied.)

It should be noted that the particular section of the Scaffold Act imposing the basic duty involved in the instant case is expressed in the passive voice and does not specify what persons owe the duty imposed. As a consequence some judicial interpretation is necessary.

■ There is language in *Pollard,* supra, and *Joki,* supra, indicating that the landowner owes an absolute nondelegable statutory duty to protect workmen and others from the extraordinary hazards associated with scaffolds. However, this lanuage must be construed in the context of the case in which it was used. *Pollard* involved a landowner in control of the work and giving orders directly to the workmen involved, while *Joki* involved a situation where there was no violation of the Scaffold Act. Neither case involved a situation where there was a violation of the Act and the landowner was not in control of the work. Consequently whatever was said in either case about the liability of a landowner not in charge of the work for a violation of the Scaffold Act is pure dictum and not controlling precedent. By way of clarification, we expressly overrule any dictum in Pollard, supra, or Joki, supra, suggesting that a landowner not in control of the work owes an absolute, nondelegable statutory duty to a scaffold worker or others, a violation of which by anyone renders him liable to the injured workman.

■ ■ In our view neither the language nor the purpose of the Scaffold Act suggests any intention by the legislature to grant multiple remedies or damages to injured workmen by

granting one recovery against the landowner, another recovery against the general contractor, a third recovery against the subcontractor using the scaffolding, and so on ad infinitum. On the contrary it is clear to us from the language of the Act construed in the light of its purpose that the legislature intended only to make the injured workman whole by granting him relief to the extent of his injuries and damages against the person, firm or corporation having direct and immediate control of the work involving the use of scaffolding.

Plaintiff contends that this Court and the federal courts have "considered the obligation of a landowner or contractee to third persons where work is performed by an independent contractor and has fixed liability on such landowner or contractee where the work was deemed extrahazardous," citing A. M. Holter Co. v. Western Mtg. Co., 51 Mont. 94, 149 P. 489; L.R.A.1915F, 835; Neyman v. Pincus, 82 Mont. 467, 267 P. 805; Shope v. City of Billings, 85 Mont. 302, 278 P. 826; Ulmen v. Schwieger, 92 Mont. 331, 12 P.2d 856; Fegles Const. Co. v. McLaughlin Const. Co. (9th Cir. 1953), 205 F.2d 637; O'Leary v. James & Wunderlich (D.C.1960), 192 F.Supp. 462; Zimmer v. California Company (1959), 174 F.Supp. 757. Suffice it to say that although these cases discuss the liability of a landowner or contractee to third persons, the cases themselves simply do not involve situations where an owner not in control of the work who hires an independent contractor is held liable for the latter's negligence.

Accordingly, we vacate and set aside the district court's order dated April 30, 1969, granting plaintiff summary judgment against the owner on the issue of liability. This cause is remanded to the district court for further proceeding not inconsistent herewith.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN C. HARRISON, concur.